**L.C. DIXON, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1592–05.**

Court of Criminal Appeals of Texas.

May 24, 2006.

Tim Copeland, Abilene, for appellant.

Patricia K. Dyer, Asst. Dist. Atty., Abilene, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the unanimous Court.

Appellant was charged with possession of cocaine. The trial court denied his pretrial motion to suppress, which claimed that the arresting officer had no probable cause to detain him and conduct a warrantless search of his car a search that led to the discovery of cocaine inside a film cannister on the console of the car. Appellant then pled guilty, and the trial court, finding an enhancement paragraph true, sentenced him to twenty years in prison.

The court of appeals affirmed the trial court's ruling, holding that, under "the totality of the circumstances" approach set out in *Illinois v. Gates*,[1] the arresting officer "had probable cause and properly searched appellant's vehicle."[2] Appellant

---

1. 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

2. *Dixon v. State*, No. 11–04–00239–CR, 2005 WL 1983578 *2, 2005 Tex.App. LEXIS 6663 *7 (Tex.App.-Eastland 2005).

petitioned this Court for discretionary review, claiming that the court of appeals erred because the evidence of probable cause was "so weak as to make its decision, and that of the trial court, clearly wrong."[3] We agree with the court of appeals that the arresting officer had probable cause to search appellant's car and therefore affirm.

## I.

At the hearing on appellant's motion to suppress, Agent Gray, a twenty-year veteran of the Abilene Police Department, testified that he was assigned to the Special Operations Division which dealt primarily with narcotics and vice violations. A confidential informant phoned Agent Gray one morning and told him that he[4] had just seen appellant "in possession of an off-white, rock-like substance that was purported to him to be rocks, which is a street name for crack cocaine." The informant said that appellant was in a specific area of Abilene "known for drugs being dealt." The informant described appellant's appearance and identified him by name. Agent Gray also knew appellant by name from past drug dealing-incidents, and he knew that appellant was a felon. The informant told Agent Gray that appellant was in a specific car: he described that car, gave the license plate number,[5] and said that the rocks were in the car. The informant called Agent Gray less than an hour after he saw appellant with the rocks. Agent Gray then met personally with the informant, showed him appellant's photograph which the informant identified as the person who had the rocks in his car. Agent Gray immediately went out to find appellant.

Agent Gray had known the informant for over a year and said that he believed that this informant was reliable and trustworthy. Although the informant was being paid and had a prior history of misdemeanor offenses, he had provided information that was always shown to be true and that had led to the arrest of at least five drug offenders.

Agent Gray and a patrol officer searched the "drug trafficking" neighborhood where the informant had said appellant was located, looking for the car that the informant had described. They soon found it parked on the side of the road near a school. Appellant was sitting in the car.

Agent Gray approached appellant, told him who he and the patrol officer were, got him out of the car and handcuffed him, advised him of his rights, told him about the information they had received, and asked him if he had any controlled substances or other items that he wanted to surrender. Appellant said no. The patrol officer then searched appellant, but found no contraband. So Agent Gray searched the car and found rocks of cocaine in a film cannister inside a black toboggan (a type of sock hat) that was on the center console. Agent Gray then arrested appellant for possession of a controlled substance.

---

**3.** Appellant's sole ground for review reads as follows:

> The court of appeals' decision upholding the trial court's determination that there was probable cause to search Mr. Dixon's car was not based upon sufficient evidence and was, therefore, so weak as to make its decision, and that of the trial court, clearly wrong.

**4.** During cross-examination, appellant's attorney indicated that he knew who the confidential informant was and that it was a specifically named female. Agent Gray neither confirmed nor denied that his informant was that person.

**5.** Agent Gray checked the license plate number and discovered that the car did not belong to appellant, but that it had not been reported stolen.

## II.

■ Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location.[6] "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]"[7] To avoid "rigid" legal rules when dealing with information obtained from informants, the Supreme Court changed the "two-pronged test" of *Aguilar v. Texas,*[8] into a totality of the circumstances test in *Illinois v. Gates.*[9] Under the *Gates* test, the "veracity" and "basis of knowledge" prongs of *Aguilar* for assessing the usefulness of an informant's tips, are not independent. "They are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for … by a strong showing as to the other[.]"[10]

■ We review a trial court's implicit findings of historical fact with great deference as long as the record supports those findings.[11] However, the question of whether a specific search or seizure is "reasonable" or supported by probable cause under the Fourth Amendment is subject to *de novo* review.[12]

## III.

■ In the present case, the evidence showed that the informant: (1) had been reliable in the past; (2) gave detailed information about the appellant, his recent whereabouts and his recent possession of cocaine "rocks"; and (3) provided verifiable detail. Furthermore, as the court of appeals noted, Agent Gray was able to verify almost every piece of the informant's information, except the actual presence of the cocaine, before detaining appellant and searching his car.[13]

■ First, the evidence established that the confidential informant was credible

---

6. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also Bower v. State,* 769 S.W.2d 887, 903, 903–04 (Tex.Crim.App.1989) (formally adopting *Gates* and its "totality of the circumstances" test for determining the existence of probable cause). Although *Gates* itself involved a search-warrant affidavit, probable-cause determinations in warrantless search situations are made using the same standard as in warrant cases. *See Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

7. *Gates,* 462 U.S. at 232, 103 S.Ct. 2317.

8. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

9. *See Gates,* 462 U.S. at 230–38, 103 S.Ct. 2317; *see also Bower,* 769 S.W.2d at 901–02.

10. *Gates,* 462 U.S. at 233, 103 S.Ct. 2317.

11. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

12. *Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("we hold that the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed *de novo* "); *Kothe v. State,* 152 S.W.3d 54, 62 (Tex.Crim. App.2004); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000) ("we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion. We will review *de novo* the lower court's application of the relevant Fourth Amendment standards").

13. *See, e.g., Draper v. United States,* 358 U.S. 307, 309–13, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (informant reported that the defendant would arrive by train in Denver on one of two days, carrying three ounces of heroin, and he gave police a detailed physical description of the defendant, his clothing, briefcase, and manner of walk; this information was verified when officer saw man meeting that description at train station; probable cause to detain and search upheld based on corroboration of innocent details).

and reliable. Agent Gray had known the informant for over a year. The information that he had provided in the past had always been shown to be true and had led to the arrest of at least five drug offenders. Thus, by Agent Gray's testimony, the informant was batting one thousand, at least with respect to five prior occasions.[14] This is an important factor in establishing the credibility of the informant as it may be inferred that the police would not repeatedly act on information from one who has not proven by experience to be reliable.[15]

Second, the evidence established that the confidential agent was relaying freshly obtained, personally observed information. He called Agent Gray right after he had seen appellant in possession of a "rock-like substance that was purported to him [the informant] to be rocks." An informant's first-hand observation of criminal activity provides a strong basis for the informant's knowledge of the facts he relays.[16] And it does not take a rocket scientist to deduce that, on the street, "rocks" means "rock cocaine."

Third, the evidence established that the confidential informant provided a wealth of verifiable details, details that Agent Gray did, in fact, verify.[17] He told Agent Gray appellant's name and accurately described

---

14. *See McCray v. Illinois,* 386 U.S. 300, 303–04, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (informant, who had given officer information about drug activities fifteen or sixteen times in the past which resulted in numerous arrests and convictions, was "credible" source of information); *Curtis v. State,* 519 S.W.2d 883, 886 (Tex.Crim.App.1975) (informant's credibility may be established when he has "given information in the past which has proven to be true and correct in every instance"); *Morgan v. State,* 516 S.W.2d 188, 190 (Tex.Crim.App.1974) (sufficient showing of credibility when the informant has given information on "four prior occasions and on each occasion the information has proven to be reliable"). Although Agent Gray did not specifically state that the informant's information had led to prior convictions as well as arrests, it is the accurate description of verified criminal activity, not the actual conviction of persons arrested on prior occasions, that pedigrees the informant's credibility. *See, e.g., United States v. Johnson,* 351 F.3d 254, 259 (6th Cir.2003) (affidavit stating that the confidential informant had previously provided information leading to "successful discovery" of narcotics indicated his reliability; noting that "[e]ven if, through reasons that may not have been related to the informant, all previous successful searches based on his statements had not led to successful prosecutions, this would by itself not have thrown any doubt on the reliability or truthfulness of the informant. The mere fact that contraband was discovered where he claimed it was going to be discovered is sufficient indicia of his reliability.").

15. *See People v. Baird,* 182 Colo. 284, 289, 512 P.2d 629, 632 (1973). Although appellant makes much of the fact that the informant had prior misdemeanor convictions and was paid for his information, those facts would affect only the weight the factfinder might give to his testimony; they do not invalidate his reliability. It is his information track record, not his conviction record, that makes him reliable in this context. *See* Charles Moylan, *Hearsay and Probable Cause: An* Aguilar *and* Spinnelli *Primer,* 25 MERCER L.REV. 723, 758 (1974) ("With the typical confidential police informant, we have recourse only to his 'track record' of past performances").

16. *See Gates,* 462 U.S. at 234, 103 S.Ct. 2317 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case"); *United States v. Johnson,* 289 F.3d 1034, 1039 (7th Cir. 2002) ("first-hand observations by a CI support a finding of reliability").

17. *See Draper,* 358 U.S. at 313, 79 S.Ct. 329 (when officer verified informant's description of defendant, his briefcase, and arrival on train on specified day, the agent had probable cause "that the remaining unverified bit of

his appearance; he identified appellant's photograph; he described the car appellant was driving and gave its license plate number; he described the specific "drug-dealing" neighborhood where appellant had been sitting in his car and gave the street boundaries.

Agent Gray immediately drove to the neighborhood where the informant had said he had just seen appellant.[18] Appellant was still in that "drug-dealing" neighborhood, parked down the street from a school. He was in the car that the informant had described. That car had the license plate number that the informant had said it had. Agent Gray verified the license plate number and discovered that the car did not belong to appellant; this fact tends to show that the informant really had seen appellant in this car, rather than simply knowing, from the rumor mill, that appellant owned a car with a certain license plate number.[19]

Appellant complains that Agent Gray did not corroborate the fact that appellant actually possessed rock cocaine in his car before he detained appellant and conducted the search. True enough, but that was the purpose of the search of appellant's car—to discover the contraband. Furthermore, requiring independent police corroboration—as a per se rule—is contrary to *Gates* and other precedent for two reasons. First, *Gates* criticizes per se rules for the determination of probable cause.[20] Second, independent police corroboration has never been treated as a *per se* requirement in each and every case.[21] In any event,

[the informant's] information—that Draper would have the heroin with him—was likewise true"); *Eisenhauer v. State,* 678 S.W.2d 947, 955 (Tex.Crim.App.1984) (noting that "[a]t the time of the [defendant's] interception, the arresting officer had personally verified every facet of the information given him by the informer except whether appellant had accomplished his mission and the cocaine was on his person or in his bag").

**18.** Agent Gray knew appellant from prior drug dealing incidents and also knew the neighborhood that the informant described as a high-crime, drug-dealing one.

**19.** *See, e.g., Dyson v. State,* 122 Md.App. 413, 424–26, 712 A.2d 573 (1998) (police received information from informant "with a good track record" who said that defendant would be returning to Maryland from a trip to New York to buy cocaine in a rented red Toyota with a specified license plate number; information was very specific and detailed, thus "showing that informant had first-hand knowledge and was not passing on some mere generalized rumor"; officer was familiar with defendant as a supplier of cocaine and knew that defendant had recently had an accident with his car and therefore needed to find a substitute vehicle; officer verified that defendant had rented the specific car informant described; officer had "ample probable cause").

**20.** *See Gates,* 462 U.S. at 231, 103 S.Ct. 2317 (noting that the "totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a 'practical, nontechnical conception.' In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act") (footnotes, citations and internal quotations omitted).

**21.** *See United States v. Harris,* 403 U.S. 573, 577–85, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (approving, without discussing corroboration, an affidavit with no police corroboration); *United States v. Brundidge,* 170 F.3d 1350, 1353 (11th Cir.1999) ("independent police corroboration has never been treated as a requirement in each and every case" when police rely upon informant); *United States v. Farese,* 612 F.2d 1376, 1379 (5th Cir.1980) ("Even if [informant's] information standing by itself were inadequate under *Aguilar* to establish probable cause, it could 'fairly be said that the tip, ... when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which

Agent Gray did corroborate almost everything that the informant told him. Corroborating the existence of the cocaine before police may search for that cocaine is neither necessary nor, in many cases, possible.[22] Because the informant's veracity and basis of knowledge were sufficient, by themselves, to establish probable cause, Agent Gray's corroboration of details was, in the words of Professor LaFave, "only the frosting on the probable cause cake." [23]

 Appellant also complains in his brief that Agent Gray illegally detained and handcuffed him before conducting the search of his car. He did not present that issue for this Court's consideration: his ground for review is limited to the exis-

tence of probable cause.[24] Appellant further asserts in his brief that Agent Gray did not have exigent circumstances to conduct a warrantless search of his car—he should have obtained a warrant. Once again, this question was not presented in his ground for review as it does not relate to the existence of probable cause.[25]

Because Agent Gray had ample probable cause to believe that appellant had rock cocaine in his possession or vehicle and that he would still have contraband in his possession when Agent Gray found him one hour after the informant had seen appellant with it, the court of appeals correctly held that the trial court did not abuse its discretion in denying appellant's motion to suppress on this basis.

would pass *Aguilar's* tests without independent corroboration' ").

**22.** *See, e.g., Eisenhauer,* 678 S.W.2d at 955; *Whaley v. State,* 686 S.W.2d 950, 951 (Tex. Crim.App.1985) (relying on "totality of circumstances" under *Gates* and finding probable cause when "all of the details of the information given to the officers by the informant were corroborated by the officers except the question of whether appellant was carrying cocaine"); *Mendoza v. State,* 492 S.W.2d 489, 492 (Tex.Crim.App.1973) (sufficient probable cause to detain defendant based on informant's information; "[a]t the point of interception, all of the informer's information, except the presence of heroin, proved to be correct, and the circumstances established his reliability and credibility").

**23.** 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE, § 3.3(f) at 176 (4th ed.2004).

**24.** We note, however, that it is well-established that when officers have probable cause to search a person or location, they may temporarily detain those persons or others who arrive during the search. *Muehler v. Mena,* 544 U.S. 93, 98, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). In *Muehler,* the Supreme Court set out three legitimate law enforcement interests that provide substantial justification for such a detention: " 'preventing flight in

the event that incriminating evidence is found' "; " 'minimizing the risk of harm to the officers' "; and facilitating " 'the orderly completion of the search,' " as detainees' " 'self-interest may induce them to open locked doors or locked containers to avoid the use of force.' " *Id.* at 98, 125 S.Ct. 1465 (quoting *Michigan v. Summers,* 452 U.S. 692, 701, 702–03, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)).

**25.** But once again, we note that the Supreme Court explicitly reiterated in *Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999), that police do not need exigent circumstances before conducting a search of a car. " 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the whole vehicle without more.' " *Id.* at 467, 119 S.Ct. 2013 (quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). As the Supreme Court stated, a finding of probable cause "alone satisfies the automobile exception to the Fourth Amendment warrant requirement." *Id. See also State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Crim.App. 1998) ("we hold, as Supreme Court precedent dictates, that the automobile exception to the Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause").

We therefore affirm the decision of the court of appeals.