Opinion issued February 7, 2008

 













In The

Court of Appeals

For The

First District of Texas






NOS. 01-05-00593-CR

 01-05-00594-CR






ISRAEL HERRERA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause Nos. 1020222 & 1020223






MEMORANDUM OPINION

 

 After his motion to suppress evidence was denied, appellant, Israel Herrera,
pleaded guilty to possession with intent to deliver a controlled substance, namely
cocaine, weighing at least 400 grams (trial court cause number 1020222 and appeal
number 01-05-00593-CR), and possession of marihuana weighing between 50 and
2000 pounds (trial court cause number 1020223 and appeal number 01-05-00594-0CR). (1) Appellant also pleaded true to two enhancement paragraphs in each case. 
Pursuant to a plea agreement between appellant and the State, the trial court assessed
punishment at 30 years' confinement and a $100 fine in the cocaine case and 30
years' confinement in the marihuana case. In two related issues on appeal, appellant
contends the trial court erred in denying his motion to suppress. We affirm.

BACKGROUND

 Officer F. Winkler of the Houston Police Department, Harris County Organized
Crime Unit, received information from a confidential informant that, on October 21,
2004, a large drug transaction would take place between Nelda Enriquez and Roger
Reyes in the parking lot of Sam's Club/Walmart at Highway 6 and the Katy Freeway. 
According to the informant, Enriquez would be driving a green Ford Explorer, and
the drug transaction would take place around noon or 1 p.m.

 Based on this information, Winkler set up surveillance in the Sam's
Club/Walmart parking lot. At 1 p.m., Nelda Enriquez drove into the parking lot in
a green Ford Explorer. Enriquez went into the store, stayed a few minutes, and then
returned to the Explorer. After about 15 minutes, Reyes entered the parking lot
driving a maroon Volkswagon Jetta. Appellant, Israel Herrera, was a passenger in the
car driven by Reyes.

 Reyes and appellant got out of the Jetta and met with Enriquez at the Explorer. 
After talking with the men for a couple of minutes, Enriquez got out of the Explorer,
opened the rear door on the passenger side, and took out a suitcase. After taking a
few steps with the suitcase, Enriquez dropped it, and Winkler could see that it was
empty. Appellant picked up the suitcase and handed it to Reyes, who placed it in the 
trunk of the Jetta. Enriquez and Appellant stood nearby and watched as Reyes put
several dark, brick-shaped objects in the suitcase. Enriquez then returned to the
Explorer and drove away, while Reyes and appellant followed in the Jetta. Winkler,
who was in an unmarked truck, followed Enriquez and Reyes.

 Winkler then had DPS Sergeant Westmoreland call for a marked patrol unit to
be nearby to make a traffic stop if needed. DPS Trooper Franden responded to the
call and was told to be on the lookout for a maroon Volkswagon following a Green
Explorer. When Franden spotted the cars, he pulled behind the Volkswagon. He was
waiting for the Volkswagon to commit a traffic violation before pulling it over. 
Winkler, who was behind Franden's marked unit, called Franden off because he
believed that if Reyes saw the marked unit, he would drive carefully and not commit
any traffic offense. Franden backed off and soon lost sight of the Jetta, but Winkler
continued to follow it in his unmarked truck. In an effort to remain behind the
Explorer, Reyes made a hard left turn into the adjoining lane, without signaling, and
almost caused an accident. Based on his observation of Reyes's traffic infraction,
Winkler called for Franden to initiate a traffic stop. Franden, who did not see Reyes's
traffic infraction, stopped the Jetta because he had been told that another officer,
Winkler, had seen Reyes make an unsafe lane change.

 Franden approached Reyes and told him that he was being stopped because he
had "cut off another vehicle almost causing a traffic accident." Franden had Reyes
get out of the car, and he began to question Reyes about where he was going, why he
was going there, who owned the car, and what he did for a living. Franden testified
that Reyes appeared visibly nervous during the discussion.

 Franden then had appellant step out of the passenger seat, and he asked
appellant the same questions he had asked Reyes. Appellant said that the car was his
girlfriend's and that Reyes was driving it because he, appellant, did not have a
driver's license. Appellant, however, was listed on the insurance card for the Jetta. 

 Franden then returned to Reyes and resumed questioning him. Reyes told
Franden that he was driving appellant's girlfriend's car because she wanted to drive
his convertible. Franden then asked Reyes for consent to search the vehicle. Reyes
responded that it was not his car, but he eventually gave Franden permission to search
the car. The record does not show that appellant objected when Reyes granted
consent to search.

 When Franden looked through the back seat, which was folded down, into the
trunk, he saw marihuana seeds and residue on the floorboard of the trunk. Franden
looked into the suitcase, which was partially unzipped, and saw what, in his
experience, appeared to be kilos of a controlled substance. Franden then retrieved the
keys to the trunk, opened it, and recovered three kilos of what later proved to be
cocaine.

 Once Franden recovered the cocaine from the car, Winkler, who was now at
the scene, approached Reyes and read him his statutory warnings. At first Reyes
denied any knowledge of the cocaine, but he later admitted that the cocaine belonged
to appellant and that he, Reyes, had helped appellant load the cocaine into the car.

 Winkler then approached appellant and had his partner, Officer V. Gonzalez,
read appellant his statutory rights in Spanish. Appellant admitted that the cocaine
was his, and that the car belonged to his girlfriend. Appellant also told Gonzalez that
he had some marihuana at his house, and that he wanted the police to go and get it out
of the house before his wife (2) got home. Appellant signed a consent to search his
home at 914 Boyd. When police searched the home, they recovered 185.9 pounds of
marihuana.

The Marihuana Case

(trial court cause number 1020223 and appeal number 01-05-00594-CR)


 The State argues that we have no jurisdiction to consider the appeal in the
marihuana case. We agree. In a plea-bargained case in which the punishment
assessed does not exceed the terms of the plea agreement, a defendant may appeal
only those matters that were raised by written motion filed and ruled on before trial,
or after obtaining the trial court's permission to appeal. Tex. R. App. P. 25.2(a)(2);
Griffin v. State, 145 S.W.3d 645, 648-49 (Tex. Crim. App. 2004); Cooper v. State,
45 S.W.3d 77, 80 (Tex. Crim. App. 2001). The trial court's certification of
appellant's right to appeal in this case states that this "is a plea-bargained case,
but matters were raised by written motion filed and ruled on before trial, and
not withdrawn or waived, and the defendant has the right of appeal." 

 However, the record does not support the correctness of the certification. 
Dears v. State, 153 S.W.3d 610, 614-15 (Tex. Crim. App. 2005). The record
shows that, at the conclusion of the motion-to-suppress hearing, the trial court
stated on the record, "The Court heard no evidence other than there was a
consent signed. I didn't hear any evidence about what, if anything, was found
pursuant to that consent. And so, the Court is not going to rule on the Motion
as to the marijuana case." Because appellant did not obtain a ruling on his
motion to suppress in the marihuana case, and he has not obtained permission
to appeal, we have no jurisdiction to consider his appeal in the marihuana case.

 Further, even if we were to consider appellant's appeal in the marihuana
case, he has failed to preserve error related to his motion to suppress in that case
because he did not obtain an adverse ruling from the trial court. See Tex. R.
App. P. 33.1(a)(2)(A). Similarly, appellant raises no issues on appeal related to
the marihuana case and provides no argument or authority. As such, any issue
related to that case is waived. Tex. R. App. P. 38.1.

 We dismiss the marihuana case for want of jurisdiction.The Cocaine Case

(trial court cause number 1020222 and appeal number 01-05-00593-CR)


 In two related points of error, appellant contends the trial court erred by
overruling his motion to suppress the cocaine recovered from the Volkswagon
Jetta. Specifically, appellant contends that the trial court erred in denying the
motion to suppress because (1) law enforcement officers were not authorized to
stop and search the vehicle because they did not witness appellant commit a
traffic violation, and (2) "the evidence shows the appellant, the known owner of
an automobile, did not consent to search the vehicle."


Standard of Review

 In a motion-to-suppress hearing, the trial court is the sole trier of fact and
judge of witness credibility and may believe or disbelieve all or any part of a
witness's testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
We review the trial court's ruling on a motion to suppress for abuse of
discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
"At the hearing on the motion, the trial court is the sole judge of the credibility
of the witnesses and the weight to be given their testimony." Id. In reviewing
the record, we defer to the trial court's determination of facts, particularly when
the trial court's findings turn on an evaluation of the credibility and demeanor
of the witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 

 We apply the same deference in reviewing the trial court's rulings on
mixed questions of law and fact to the extent that the rulings turn upon a similar
credibility evaluation. Id. If a mixed question of law and fact does not turn on
a witness's credibility and demeanor, however, we review the trial court's
determination de novo. Id. When, as in this case, the trial court files no findings
of fact, we view the evidence in the light most favorable to the trial court's ruling
and assume that the trial court implicitly made findings of fact that support its
ruling as long as those implied findings of fact are supported by the record. 
Ross, 32 S.W.3d at 855. "In considering a trial court's ruling on a motion to
suppress, an appellate court must uphold the trial court's ruling if it is
reasonably supported by the record and is correct under any theory of law
applicable to the case." State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App.
2002). 

Probable Cause

 At the motion to suppress hearing, the State presented three grounds for
denying appellant's motion to suppress. First, the State argued that the search
of the Volkswagon was valid pursuant to Reyes's consent. Second, the State
argued that the search was valid as an incident to Reyes's arrest for a traffic
violation. Finally, the State argued that the police officers had probable cause
to search "based upon the narcotics transaction that the officer viewed in the
Sam's parking lot."

 Under both state and federal law, a police officer may conduct a
warrantless search of an automobile if he has probable cause to believe a crime
has been committed and there is contraband located somewhere inside the
vehicle. Carroll v. United States, 267 U.S. 132, 158-59, 45 S. Ct. 280, 287 (1925);
Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The justification for
this automobile exception to the warrant requirement is that vehicles are
inherently mobile, and the expectation of privacy with respect to an automobile
is relatively low. Id. A search based on the automobile exception extends to any
containers found in the vehicle if the officers have probable cause to believe that
the container holds contraband or evidence. California v. Acevedo, 500 U.S. 565,
580, 111 S. Ct. 1982, 1991 (1991).

 The standard for determining probable cause based on an informant's tip
is set forth in Illinois v. Gates, 462 U.S. 213, 239-40, 103 S. Ct. 2317, 2332-33
(1983). Probable cause exists when the facts and circumstances within the
officer's knowledge and about which he has reasonable trustworthy information
are sufficient to warrant a person of reasonable caution to believe that a crime
has been committed. Torres v. State, 182 S.W.3d 899,901 (Tex. Crim. App. 2005). 
Put another way, probable cause means "a fair probability that contraband or
evidence of a crime will be found." Gates, 462 U.S. at 238, 103 S. Ct. at 2332. 

 Under Gates, we are to review the "totality of the circumstances" to
determine whether probable cause exists. Id., Eisenhauer v. State, 678 S.W.2d
947, 952 (Tex. Crim. App. 1988). Probable cause may arise from information
supplied by a confidential informant, provided the information is corroborated. 
See Eisenhauer, 678 S.W.2d at 955. "In making a determination of probable
cause, the relevant inquiry is not whether particular conduct is 'innocent' or
'guilty,' but the degree of suspicion that attaches to particular non-criminal
acts." Angulo v. State, 727 S.W.2d 276, 279-80 (Tex. Crim. App. 1987), (quoting
Gates, 462 U.S. at 243, nr. 13, 103 S. Ct. at 2335, n. 13). Seemingly innocent
behavior can become suspicious in light of a tip. Angulo, 727 S.W.2d at 279-80. 
When a tip provides no indicia of reliability, such as the prediction of future
actions, there must be something more, such as observed activity to elevate the
level of suspicion. Parish v. State, 939 S.W. 2d 201, 204 (Tex. App.--Austin 1997,
no pet.)

 In this case, the tip provided an indicia of reliability in that it predicted
future events, which were verified by Winkler. See Gates, 462 U.S. at 245, 103
S. Ct. at 2335-36 (noting that informant's detailed knowledge of defendant's
future activities makes it more likely that informant possessed reliable
information about defendant's illegal activities). Officer Winkler received
information from a confidential informant that, around noon or 1 p.m. on
October 21, 2004, Nelda Enriquez and Roger Reyes would conduct a large drug
transaction in the parking lot of a Sam's Club/Walmart at Highway 6 and the
Katy Freeway. According to the informant, Nelda Enriquez would be driving
a green Ford Explorer. Based on this information, Winkler set up surveillance
at the provided time and location. At the appointed time, Nelda Enriquez
showed up driving a green Explorer. A few minutes later, Reyes arrived, as
predicted by the informant. 

 In addition to the future activity predicted by the tip and verified by
Winkler, Winkler also observed activities that were suspicious in light of the tip. 
As Winkler watched, Reyes and Enriquez conducted some sort of transaction,
while appellant stood nearby and watched. Winkler saw Enriquez take a
suitcase out of her car. When she dropped it, Winkler confirmed that the
suitcase was empty. Appellant picked up the suitcase and handed it to Reyes,
who placed it in the back of the Jetta. Winkler then saw Reyes place several
"brick-shaped" objects in the suitcase.

 In sum, through Winkler's own personal observation and investigation, he
was able to corroborate the informant's tip. Specifically, Winkler verified (1)
the place where the informant said the transaction would take place, (2) that
Nelda Enriquz and Roger Reyes would be involved in the transaction, (3) the
time the transaction would take place, and (4) the kind of car that at least one of
the parties would be driving. In addition, Winkler actually saw Reyes put
several "brick-shaped" objects into a suitcase. The only detail Winkler was not
able to independently verify was whether the "brick-shaped" objects were, in
fact, narcotics, which could not be done until the bricks were field-tested. 
However, corroborating the existence of the contraband before police search for
the contraband is neither necessary, nor possible in many cases. Dixon v. State,
206 S.W.3d 613, 610 (Tex. Crim. App. 2006) (citing Whaley v. State, 686 S.W.2d
950, 951 (Tex. Crim. App. 1985)(relying on Gates's "totality of the
circumstances" test and finding probable cause when "all of the details of the
information given to the officers by the informant were corroborated by the
officers except the question of whether appellant was carrying cocaine.")).

 Finally, we note that there was information before the trial court that
Winkler's information came from a known informant, (3) who had provided
Winkler with accurate information on three or four other occasions. This is a
factor in establishing the credibility of the informant and the reliability of the
information conveyed to the police. See Dixon, 206 S.W.3d at 617.

 Even though there was nothing overtly criminal about appellant's and
Reyes's activities in the parking lot, those same activities, when considered in the
light of the informant's information, the informant's previous reliability, the
corroboration by independent police investigation, and the officer's own
observations, provide the police with sufficient probable cause to believe that the
suitcase in the rear of the Volkswagon Jetta contained contraband. When the
police have probable cause to believe that a container in an automobile contains
contraband, the officers may search that container without obtaining a warrant. 
Acevedo, 500 U.S. 565, 111 S. Ct. at 1983.

 Because the police officers had sufficient probable cause to perform a
warrantless search of the suitcase, the trial court did not err in denying
appellant's motion to suppress. As such, we need not decide whether the search
was also valid as a search incident to arrest or a search pursuant to consent, and
decline to do so.

 We overrule points of error one and two.




CONCLUSION

 We dismiss the appeal in cause number 01-05-00594-CR for want of
jurisdiction.

 We affirm the judgment in cause number 01-05-00593-CR.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. §§ 
 
 § 
 
2. 
 "" ""
3. 
 '