# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00284-CR

**Henry Loera, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. D-1-DC-10-205998, HONORABLE KAREN SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Henry Loera was convicted by a jury of possession of a controlled substance, to wit, heroin, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West 2010). After finding that Loera had two previous felony convictions, the jury assessed punishment at seventy-five years' imprisonment. *See* Tex. Penal Code § 12.42(d) (West 2011). In his sole issue on appeal, Loera asserts that the trial court erred in denying his motion to suppress the evidence obtained pursuant to a search warrant. We affirm the judgment of the trial court.

## BACKGROUND

Between August and September of 2010, a detective with the Austin Police Department's Organized Crime Division received information from a confidential informant that an

individual named Henry, later identified as Loera, was selling heroin and cocaine.[1] The detective

provided the confidential informant with "buy money" and observed the informant purchasing heroin

from Loera and his associate John Ochoa on at least three separate occasions.

On October 7, 2010, the informant told the detective that Ochoa was selling heroin

and cocaine out of an apartment. The informant gave the detective the apartment's address, and the

detective and other members of the Organized Crime Division prepared for a final "controlled buy."

At this controlled buy, the detectives searched the informant to make sure that he did not have any

narcotics in his possession. The officers then provided the informant with buy money and observed

the informant call Ochoa and arrange a heroin purchase at a predetermined location. Officers who

were observing the address that the informant provided saw Ochoa leave the apartment immediately

after the informant's call and proceed to the location of the heroin purchase. The officers followed

Ochoa the entire drive from the apartment to the controlled buy; Ochoa did not make any other stops.

The detective observed Ochoa sell the informant approximately .01 grams of heroin.

On October 9, 2010, the detective submitted an affidavit for a search warrant for

evidence relating to the sale of narcotics at the apartment. A magistrate issued a search warrant for

the apartment that morning, which the detective and other officers executed within seventy-two

hours. During the search of the apartment, the detective discovered approximately 14.62 grams of

heroin in the freezer, as well as digital scales, hypodermic needles, and other drug paraphernalia.

Loera was present at the apartment at the time of the search, and after the search was concluded, the

officers arrested Loera for possession of narcotics.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at the pretrial
hearing and at trial.

Loera was subsequently indicted for possession of narcotics, to wit, heroin, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(d). At a pretrial hearing, Loera moved to suppress the evidence obtained pursuant to the search warrant, arguing that the warrant was not supported by probable cause. The trial court denied the motion. At trial, the State introduced five witnesses, including the detective who led the investigation, two officers who participated in the search of the apartment, and two forensic experts who analyzed the evidence recovered from the apartment. Loera testified in his own defense, but called no other witnesses. The jury convicted Loera of the offense as charged. Loera elected to have the jury assess punishment. At the punishment stage, the jury found that Loera had been convicted of two previous felonies, and assessed punishment at seventy-five years' imprisonment. *See* Tex. Penal Code Ann. § 12.42(d). This appeal followed.

## STANDARD OF REVIEW

Ordinarily, a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard, giving almost total deference to the trial court's findings of fact but reviewing conclusions of law de novo. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, when ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is limited to the four corners of the affidavit supporting the warrant and thus makes no factual or credibility determinations. *Id.* Therefore, we review a trial court's ruling on a motion to suppress evidence obtained pursuant to a search warrant under a unique standard. *See State v. Webre*, 347 S.W.3d 381, 384 (Tex. App.—Austin 2011, no pet.). This standard requires both trial and appellate courts to be highly deferential to a magistrate's decision to issue a search warrant, reflecting the

3

constitutional preference that searches be conducted pursuant to a warrant. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

Reviewing courts must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Probable cause exists when, considering the totality of the circumstances, there is a "fair probability that . . . evidence will be found at the specified location." *Rodriguez*, 232 S.W.3d at 60 (internal quotations omitted). While our review is limited to the four corners of the affidavit, we interpret the affidavit in a "commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt we defer to all reasonable inferences that the magistrate could have made." *Id.* at 61.

## DISCUSSION

In his sole issue on appeal, Loera argues that the trial court erred in denying his motion to suppress evidence obtained pursuant to the search warrant. Specifically, Loera claims that the affidavit in support of the search warrant focuses on Ochoa's sale of narcotics but fails to establish probable cause to believe that Ochoa was dealing narcotics out of the location specified in the warrant. In determining whether the warrant was supported by probable cause, we consider only the evidence within the four corners of the affidavit, ignoring all other information in the detective's testimony. *Rodriguez*, 232 S.W.3d at 61. As the court of criminal appeals explained, "[t]he issue is not whether there are other facts that could have, or even should have, been included in the

4

affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit." *Id.* at 62.

An affidavit in support of a search warrant need not be based solely on the direct personal observations of the affiant, and it may contain hearsay information from an unnamed informant. *See Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983); *Flores v. State*, 287 S.W.3d 307, 312 (Tex. App.—Austin 2009), *aff'd*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). However, the affidavit must inform the magistrate of some of the underlying circumstances supporting the affiant's belief that an informant is credible and the information is reliable. *See Flores*, 287 S.W.3d at 312. The informant's "veracity, reliability, and basis of information" as contained in the affidavit are highly relevant factors in determining whether probable cause exists. *See id.* (citing *Gates*, 462 U.S. at 238–39). However, whether probable cause exists to support the issuance of a warrant is judged by the totality of the circumstances, and the reliability and credibility of an informant may be supported by the affiant's reasonable corroboration of the informant's information. *See id.*

In this case, the affidavit supporting the search warrant was written by the lead detective. He stated that he had probable cause to believe that "heroin; cocaine; crack cocaine; U.S. Currency derived from the illegal sale of crack cocaine" and various other drug paraphernalia would be found in the apartment and its curtilage. The warrant listed Loera, Loera's girlfriend, and Ochoa as persons suspected of being in "charge of and control[]" of the apartment. In support of his assertion, the detective recited facts relating to the "controlled buy" between the confidential informant and Ochoa. The affidavit provided, in relevant part:

5

On or about the 7th day of October 2010, your affiant received information from a confidential informant that heroin and cocaine was [sic] being kept at and sold from [the apartment] and in the cartilage [sic] area . . . . The informant stated that a Hispanic male later id as [Ochoa] sells illegal narcotics from this location. The informant stated that they are familiar with Ochoa from whom the informant has purchased heroin in the *recent past* on *multiple occasions*.

Within the past 72 hours, in a controlled buy situation, your affiant used a confidential informant for the purpose of purchasing heroin from Ochoa. The informant was searched for narcotics or contraband with negative results prior to the buy. The informant was provided with an amount of pre-recorded "buy money". Detectives from the Organized Crime Division set up [s]urveillance at [the apartment]. Your affiant had the confidential information [sic] call Ochoa on the phone. After the confidential informant called Ochoa on the phone, Detectives observed Ochoa walked [sic] out of [the apartment] and get into a [vehicle]. Detectives followed Ochoa from [the apartment] to the pre-determined meet location between the confidential informant and Ochoa. Ochoa drove straight to the meet location, without stopping at any other location. Detectives observed the confidential informant meet with Ochoa. Ochoa delivered Heroin to the confidential informant. Your affiant seized the Heroin from the confidential informant. The Heroin tested positive with a weight of .1 grams.

The confidential informant has provided your affiant with information in the recent past regarding the possession and distribution of illegal substances; specifically cocaine, crack cocaine and heroin in the Austin, Travis County, Texas area that has proven to be true and correct. . . .

Your affiant has searched the City of Austin computerized utilities records and found that account #59610700 is for utilities service at [the apartment], is currently active, and is in the name of [Loera's girlfriend's son]. [Loera's girlfriend's son] is the son of [Loera's girlfriend]. [Loera's girlfriend] is girlfriend/wife of [Loera]. [Loera] has Austin Police Department involvement with [Ochoa]. (emphasis added).

The affidavit concluded by stating that, based on the detective's experience and training in narcotics investigation, he knows that people involved in narcotics trafficking keep narcotics and various paraphernalia in their residences, motor vehicles, and on their persons.

The affidavit provided the following relevant facts: (1) the confidential informant told the detective that Ochoa was selling narcotics out of the apartment; (2) the confidential informant purchased heroin from Ochoa "in the recent past on multiple occasions"; (3) the confidential informant provided reliable information to the detective "in the recent past"; (4) during the controlled buy, the detectives observed Ochoa leave the apartment to drive directly to a predetermined location to sell heroin to the confidential informant; (5) Ochoa actually sold heroin to the informant during the controlled buy; (6) Ochoa had "Austin Police Department involvement" with Loera; (7) Loera's girlfriend's son's name was on the utility account for the apartment; and (8) based on the detective's experience and training, evidence relating to the sale of narcotics would be found in the apartment. Furthermore, although not explicitly stated in the affidavit, the magistrate could have reasonably inferred that the confidential informant who told the detective about Ochoa's drug trafficking is the same informant who participated in the controlled buy.

Given the facts contained in the affidavit and the reasonable inferences that could be made from the facts, we conclude that the trial court had a substantial basis to believe that probable cause existed to search the apartment. The confidential informant's statement that Ochoa was selling narcotics out of the apartment, standing alone, may not be sufficient to establish probable cause. However, the affidavit states that the confidential informant provided the detective with "true and correct" information about the sale and distribution of narcotics in the Austin area in the recent

7

past. This statement demonstrates that the confidential informant was credible and reliable, and thus his statement that Ochoa was dealing narcotics out of the apartment is more likely to be true. *See Dixon v. State*, 206 S.W.3d 613, 617 (Tex. Crim. App. 2006) (informant's past reliability is "important factor in establishing the credibility of the informant as it may be inferred that the police would not repeatedly act on information from one who has not proven by experience to be reliable."). Thus, the affidavit in this case provides sufficient information to show that the informant was credible. *See id.*

Furthermore, the affidavit states that the confidential informant purchased narcotics from Ochoa on multiple occasions in the recent past. This statement is supported by the fact that the informant was able to call Ochoa and schedule the heroin purchase during the controlled buy. Therefore, the magistrate could reasonably have inferred that, based on his repeat transactions with Ochoa, the informant had some personal knowledge of Ochoa's drug dealing generally. *See Branch v. State*, 335 S.W.3d 893, 903 (Tex. App.—Austin 2011, pet. ref'd) (noting that informant's repeat dealings with suspect shows informant had "some familiarity" with suspect). Thus, the affidavit provides "underlying facts upon which the informant based his belief[]" that Ochoa was selling narcotics out of the apartment, i.e., the informant's repeat purchases of narcotics from Ochoa. *See Ware*, 724 S.W.2d at 40.

Finally, the controlled buy as described in the affidavit supports the magistrate's determination that there was probable cause to search the apartment. The affidavit states that police officers observed the confidential informant call Ochoa to schedule the drug purchase, that officers observed Ochoa leave the apartment and proceed directly to the location of the controlled buy, and

that Ochoa delivered narcotics to the informant. The fact that Ochoa left the apartment to deliver narcotics supports a reasonable inference that narcotics were being kept in the apartment. *See United States v. Aguirre*, 664 F.3d 606, 611 (5th Cir. 2011) (holding that discovery of narcotics on suspect immediately after suspect left home creates likelihood suspect kept narcotics at home). Furthermore, the fact that Ochoa left the apartment to deliver narcotics corroborates the confidential informant's statement that Ochoa was dealing narcotics out of the apartment. *See Dixon*, 206 S.W.3d at 617–18 (noting that informant's statements are more reliable when corroborated).

Loera emphasizes that Ochoa is the focus of the affidavit, and the only fact connecting Ochoa to the apartment is that he was seen leaving the apartment during the controlled buy. Whether Ochoa was the focus of the affidavit is irrelevant; the issue is whether the affidavit established probable cause to search the apartment. *Winkles v. State*, 634 S.W.3d 289, 297–98 (Tex. Crim. App. 1981) (Odom, J., dissenting) (op. adopted on reh'g). The affidavit clearly states that the confidential informant told the detective that Ochoa was dealing narcotics out of the apartment. As we have discussed, the confidential informant's credibility and reliability, along with the corroboration of his statements, creates a reasonable probability that this statement was true. *See Dixon*, 206 S.W.3d at 617–18. Therefore, we find that the magistrate had a substantial basis to conclude that there was a reasonable probability that evidence relating to the sale of narcotics would be found in the apartment. Thus the trial court did not err in denying Loera's motion to suppress the evidence obtained pursuant to the search warrant. Loera's sole point of error is overruled.

**CONCLUSION**

We affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   August 2, 2012

Do Not Publish

10