TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00284-CR






Henry Loera, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. D-1-DC-10-205998, HONORABLE KAREN SAGE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


Appellant Henry Loera was convicted by a jury of possession of a controlled
substance, to wit, heroin, in an amount of four grams or more but less than 200 grams. See Tex.
Health & Safety Code Ann. § 481.115(d) (West 2010). After finding that Loera had two previous
felony convictions, the jury assessed punishment at seventy-five years' imprisonment. See Tex.
Penal Code § 12.42(d) (West 2011). In his sole issue on appeal, Loera asserts that the trial court
erred in denying his motion to suppress the evidence obtained pursuant to a search warrant. We
affirm the judgment of the trial court.


BACKGROUND


Between August and September of 2010, a detective with the Austin Police
Department's Organized Crime Division received information from a confidential informant that an
individual named Henry, later identified as Loera, was selling heroin and cocaine. (1) The detective
provided the confidential informant with "buy money" and observed the informant purchasing heroin
from Loera and his associate John Ochoa on at least three separate occasions.

On October 7, 2010, the informant told the detective that Ochoa was selling heroin
and cocaine out of an apartment. The informant gave the detective the apartment's address, and the
detective and other members of the Organized Crime Division prepared for a final "controlled buy."
At this controlled buy, the detectives searched the informant to make sure that he did not have any
narcotics in his possession. The officers then provided the informant with buy money and observed
the informant call Ochoa and arrange a heroin purchase at a predetermined location. Officers who
were observing the address that the informant provided saw Ochoa leave the apartment immediately
after the informant's call and proceed to the location of the heroin purchase. The officers followed
Ochoa the entire drive from the apartment to the controlled buy; Ochoa did not make any other stops.
The detective observed Ochoa sell the informant approximately .01 grams of heroin.

On October 9, 2010, the detective submitted an affidavit for a search warrant for
evidence relating to the sale of narcotics at the apartment. A magistrate issued a search warrant for
the apartment that morning, which the detective and other officers executed within seventy-two
hours. During the search of the apartment, the detective discovered approximately 14.62 grams of
heroin in the freezer, as well as digital scales, hypodermic needles, and other drug paraphernalia.
Loera was present at the apartment at the time of the search, and after the search was concluded, the
officers arrested Loera for possession of narcotics.

Loera was subsequently indicted for possession of narcotics, to wit, heroin, in an
amount of four grams or more but less than 200 grams. See Tex. Health & Safety Code Ann.
§ 481.115(d). At a pretrial hearing, Loera moved to suppress the evidence obtained pursuant to
the search warrant, arguing that the warrant was not supported by probable cause. The trial court
denied the motion. At trial, the State introduced five witnesses, including the detective who led the
investigation, two officers who participated in the search of the apartment, and two forensic experts
who analyzed the evidence recovered from the apartment. Loera testified in his own defense, but
called no other witnesses. The jury convicted Loera of the offense as charged. Loera elected to have
the jury assess punishment. At the punishment stage, the jury found that Loera had been convicted
of two previous felonies, and assessed punishment at seventy-five years' imprisonment. See Tex.
Penal Code Ann. § 12.42(d). This appeal followed.


STANDARD OF REVIEW


Ordinarily, a trial court's ruling on a motion to suppress is reviewed under a
bifurcated standard, giving almost total deference to the trial court's findings of fact but reviewing
conclusions of law de novo. State v. McLain, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However,
when ruling on a motion to suppress evidence obtained pursuant to a search warrant, a trial court is
limited to the four corners of the affidavit supporting the warrant and thus makes no factual or
credibility determinations. Id. Therefore, we review a trial court's ruling on a motion to suppress
evidence obtained pursuant to a search warrant under a unique standard. See State v. Webre, 347
S.W.3d 381, 384 (Tex. App.--Austin 2011, no pet.). This standard requires both trial and appellate
courts to be highly deferential to a magistrate's decision to issue a search warrant, reflecting the
constitutional preference that searches be conducted pursuant to a warrant. McLain, 337 S.W.3d
at 271; Rodriguez v. State, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

Reviewing courts must determine whether the magistrate had a substantial basis
for concluding that probable cause existed. State v. Jordan, 342 S.W.3d 565, 569 (Tex. Crim.
App. 2011) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). Probable cause exists when,
considering the totality of the circumstances, there is a "fair probability that . . . evidence will
be found at the specified location." Rodriguez, 232 S.W.3d at 60 (internal quotations omitted).
While our review is limited to the four corners of the affidavit, we interpret the affidavit in a
"commonsensical and realistic manner, recognizing that the magistrate may draw reasonable
inferences. When in doubt we defer to all reasonable inferences that the magistrate could have
made." Id. at 61.


DISCUSSION


In his sole issue on appeal, Loera argues that the trial court erred in denying his
motion to suppress evidence obtained pursuant to the search warrant. Specifically, Loera claims
that the affidavit in support of the search warrant focuses on Ochoa's sale of narcotics but fails to
establish probable cause to believe that Ochoa was dealing narcotics out of the location specified in
the warrant. In determining whether the warrant was supported by probable cause, we consider only
the evidence within the four corners of the affidavit, ignoring all other information in the detective's
testimony. Rodriguez, 232 S.W.3d at 61. As the court of criminal appeals explained, "[t]he issue
is not whether there are other facts that could have, or even should have, been included in the
affidavit; we focus on the combined logical force of facts that are in the affidavit, not those that are
omitted from the affidavit." Id. at 62.

An affidavit in support of a search warrant need not be based solely on the direct
personal observations of the affiant, and it may contain hearsay information from an unnamed
informant. See Hennessy v. State, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983); Flores v. State,
287 S.W.3d 307, 312 (Tex. App.--Austin 2009), aff'd, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010).
However, the affidavit must inform the magistrate of some of the underlying circumstances
supporting the affiant's belief that an informant is credible and the information is reliable. See Flores,
287 S.W.3d at 312. The informant's "veracity, reliability, and basis of information" as contained
in the affidavit are highly relevant factors in determining whether probable cause exists. See id.
(citing Gates, 462 U.S. at 238-39). However, whether probable cause exists to support the issuance
of a warrant is judged by the totality of the circumstances, and the reliability and credibility of an
informant may be supported by the affiant's reasonable corroboration of the informant's information.
See id.

In this case, the affidavit supporting the search warrant was written by the lead
detective. He stated that he had probable cause to believe that "heroin; cocaine; crack cocaine;
U.S. Currency derived from the illegal sale of crack cocaine" and various other drug paraphernalia
would be found in the apartment and its curtilage. The warrant listed Loera, Loera's girlfriend, and
Ochoa as persons suspected of being in "charge of and control[]" of the apartment. In support of
his assertion, the detective recited facts relating to the "controlled buy" between the confidential
informant and Ochoa. The affidavit provided, in relevant part:

On or about the 7th day of October 2010, your affiant received
information from a confidential informant that heroin and cocaine
was [sic] being kept at and sold from [the apartment] and in the
cartilage [sic] area . . . . The informant stated that a Hispanic male
later id as [Ochoa] sells illegal narcotics from this location. The
informant stated that they are familiar with Ochoa from whom the
informant has purchased heroin in the recent past on multiple
occasions.


Within the past 72 hours, in a controlled buy situation, your affiant
used a confidential informant for the purpose of purchasing heroin
from Ochoa. The informant was searched for narcotics or contraband
with negative results prior to the buy. The informant was provided
with an amount of pre-recorded "buy money". Detectives from the
Organized Crime Division set up [s]urveillance at [the apartment].
Your affiant had the confidential information [sic] call Ochoa on the
phone. After the confidential informant called Ochoa on the phone,
Detectives observed Ochoa walked [sic] out of [the apartment] and
get into a [vehicle]. Detectives followed Ochoa from [the apartment]
to the pre-determined meet location between the confidential informant
and Ochoa. Ochoa drove straight to the meet location, without stopping
at any other location. Detectives observed the confidential informant
meet with Ochoa. Ochoa delivered Heroin to the confidential
informant. Your affiant seized the Heroin from the confidential
informant. The Heroin tested positive with a weight of .1 grams.


The confidential informant has provided your affiant with information
in the recent past regarding the possession and distribution of illegal
substances; specifically cocaine, crack cocaine and heroin in the
Austin, Travis County, Texas area that has proven to be true and
correct. . . .


Your affiant has searched the City of Austin computerized utilities
records and found that account #59610700 is for utilities service at
[the apartment], is currently active, and is in the name of [Loera's
girlfriend's son]. [Loera's girlfriend's son] is the son of [Loera's
girlfriend]. [Loera's girlfriend] is girlfriend/wife of [Loera]. [Loera]
has Austin Police Department involvement with [Ochoa]. (emphasis
added).



The affidavit concluded by stating that, based on the detective's experience and training in narcotics
investigation, he knows that people involved in narcotics trafficking keep narcotics and various
paraphernalia in their residences, motor vehicles, and on their persons.The affidavit provided the following relevant facts: (1) the confidential informant
told the detective that Ochoa was selling narcotics out of the apartment; (2) the confidential
informant purchased heroin from Ochoa "in the recent past on multiple occasions"; (3) the
confidential informant provided reliable information to the detective "in the recent past"; (4) during
the controlled buy, the detectives observed Ochoa leave the apartment to drive directly to a
predetermined location to sell heroin to the confidential informant; (5) Ochoa actually sold heroin
to the informant during the controlled buy; (6) Ochoa had "Austin Police Department involvement"
with Loera; (7) Loera's girlfriend's son's name was on the utility account for the apartment; and
(8) based on the detective's experience and training, evidence relating to the sale of narcotics
would be found in the apartment. Furthermore, although not explicitly stated in the affidavit, the
magistrate could have reasonably inferred that the confidential informant who told the detective
about Ochoa's drug trafficking is the same informant who participated in the controlled buy.

Given the facts contained in the affidavit and the reasonable inferences that could be
made from the facts, we conclude that the trial court had a substantial basis to believe that probable
cause existed to search the apartment. The confidential informant's statement that Ochoa was
selling narcotics out of the apartment, standing alone, may not be sufficient to establish probable
cause. However, the affidavit states that the confidential informant provided the detective with "true
and correct" information about the sale and distribution of narcotics in the Austin area in the recent
past. This statement demonstrates that the confidential informant was credible and reliable, and
thus his statement that Ochoa was dealing narcotics out of the apartment is more likely to be true.
See Dixon v. State, 206 S.W.3d 613, 617 (Tex. Crim. App. 2006) (informant's past reliability is
"important factor in establishing the credibility of the informant as it may be inferred that the police
would not repeatedly act on information from one who has not proven by experience to be reliable.").
Thus, the affidavit in this case provides sufficient information to show that the informant was
credible. See id.

Furthermore, the affidavit states that the confidential informant purchased narcotics
from Ochoa on multiple occasions in the recent past. This statement is supported by the fact that
the informant was able to call Ochoa and schedule the heroin purchase during the controlled buy.
Therefore, the magistrate could reasonably have inferred that, based on his repeat transactions
with Ochoa, the informant had some personal knowledge of Ochoa's drug dealing generally. See
Branch v. State, 335 S.W.3d 893, 903 (Tex. App.--Austin 2011, pet. ref'd) (noting that informant's
repeat dealings with suspect shows informant had "some familiarity" with suspect). Thus, the affidavit
provides "underlying facts upon which the informant based his belief[]" that Ochoa was selling
narcotics out of the apartment, i.e., the informant's repeat purchases of narcotics from Ochoa. See
Ware, 724 S.W.2d at 40.

Finally, the controlled buy as described in the affidavit supports the magistrate's
determination that there was probable cause to search the apartment. The affidavit states that police
officers observed the confidential informant call Ochoa to schedule the drug purchase, that officers
observed Ochoa leave the apartment and proceed directly to the location of the controlled buy, and
that Ochoa delivered narcotics to the informant. The fact that Ochoa left the apartment to deliver
narcotics supports a reasonable inference that narcotics were being kept in the apartment. See
United States v. Aguirre, 664 F.3d 606, 611 (5th Cir. 2011) (holding that discovery of narcotics on
suspect immediately after suspect left home creates likelihood suspect kept narcotics at home).
Furthermore, the fact that Ochoa left the apartment to deliver narcotics corroborates the confidential
informant's statement that Ochoa was dealing narcotics out of the apartment. See Dixon, 206 S.W.3d
at 617-18 (noting that informant's statements are more reliable when corroborated).

Loera emphasizes that Ochoa is the focus of the affidavit, and the only fact connecting
Ochoa to the apartment is that he was seen leaving the apartment during the controlled buy. Whether
Ochoa was the focus of the affidavit is irrelevant; the issue is whether the affidavit established
probable cause to search the apartment. Winkles v. State, 634 S.W.3d 289, 297-98 (Tex. Crim.
App. 1981) (Odom, J., dissenting) (op. adopted on reh'g). The affidavit clearly states that the
confidential informant told the detective that Ochoa was dealing narcotics out of the apartment.
As we have discussed, the confidential informant's credibility and reliability, along with the
corroboration of his statements, creates a reasonable probability that this statement was true. See
Dixon, 206 S.W.3d at 617-18. Therefore, we find that the magistrate had a substantial basis to
conclude that there was a reasonable probability that evidence relating to the sale of narcotics would
be found in the apartment. Thus the trial court did not err in denying Loera's motion to suppress the
evidence obtained pursuant to the search warrant. Loera's sole point of error is overruled.


CONCLUSION


We affirm the judgment of the trial court.




 __________________________________________

 Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: August 2, 2012

Do Not Publish
1. The facts recited herein are taken from the testimony and exhibits admitted at the pretrial
hearing and at trial.