NO.
07-08-0511-CR

 

                                                   IN
THE COURT OF APPEALS

 

                                       FOR THE
SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                     PANEL
C

 

                                                            FEBRUARY
1, 2010

 

                                            ______________________________

 

 

                                           RANDY ERIC MORGAN, APPELLANT

 

                                                                            V.

 

                                             THE STATE OF TEXAS, APPELLEE

 

                                         _________________________________

 

                FROM THE COUNTY COURT AT LAW NO.
1 OF POTTER COUNTY;

 

                     NO. 121,814; HONORABLE W.F.
ACORKY@ ROBERTS, JUDGE

 

                                           _______________________________

 

Before QUINN, C.J., and HANCOCK
and PIRTLE, JJ.

 

                                                                      OPINION

 

Appellant, Randy Eric Morgan, pled guilty to possession of marihuana in an amount of two ounces or less, a Class B
misdemeanor,[1]
and was sentenced to confinement in the Potter County Detention Center for 150
days and fined $400..  In a single issue,
Appellant asks whether the trial court erred by denying his motion to suppress
evidence of marihuana discovered in his vehicle.  We affirm.

                                                               BACKGROUND

On April 22, 2008, Appellant was charged with possession of a useable
quantity of marihuana in the amount of two ounces or less.  On September 12, 2008, Appellant filed a
motion to suppress evidence of marihuana found in his Sport Utility Vehicle
(SUV) in plain view during a safety search by Officer James Clements.  

At the suppression hearing, the primary issue was whether Officer
Clements had reasonable suspicion to detain Appellant for investigatory
purposes prior to discovering the marihuana. 
The State=s first witness was Officer Douglas Glick.  Since 1996, Officer Glick served as the
Amarillo Police Department=s school liaison officer at Caprock High School.  In this capacity, he spoke with students on a
daily basis and, over the years, determined the credibility of certain students
based upon the reliability of information they provided.  








During the latter part of March and early April 2008, the school was
experiencing gang-related problems. 
Students had been involved in fights between alleged gang members and
groups from outside the school campus. 
On March 31, Officer Glick responded to a call describing a large fight
with a gathering of approximately 200 students in the parking lot of the school=s activity center. 
He dispersed the crowd.[2]  Later, the next day on April 1, his student
sources reported witnessing a fight between Appellant (a former student) and
another person in the parking lot of the activity center on March 31.

            On
April 2, Officer Glick received reports from students that a second fight would
take place off campus at Glenwood Park. 
His student sources, who witnessed the fight on March 31, told Officer
Glick that Appellant would be fighting on April 2 and 3.  His sources asked to remain anonymous because
they feared gang retaliation.  

There were no reported fights on April 2.  However, on April 3, Officer Glick
investigated an assault on two students. 
One student was discovered unconscious, lying in the street.  His injuries were serious and an ambulance
was called.  Although he suspected the
students had been assaulted by Northside gang members, the victims were
uncooperative.  Shortly thereafter, he
began hearing rumors that a big gang-related fight would be taking place after
school the next day at Glenwood Park. 
His sources reported that Appellant would again be a participant.

When Officer Glick arrived at school on April 4, students approached
him with reports that Northside gang members were coming to the school to shoot
people.[3]  He was told that, if he attempted to
intervene, he would also be shot.  After
hearing the rumors, he sought out sources he knew to be credible based on his
past experience.  He spoke with students,
gang members, and administrators.  His
sources verified the reports and indicated that Appellant and another person
would be involved in the fight.  

Based upon this information, Officer Glick met with school
administrators and members of the Amarillo Police Department (APD).  He had a sense of urgency because of the
serious assault that occurred the day before and reports that weapons would be
involved. He told school administrators and APD officers that he had received reports
a fight would take place that day at school between Northside and Eastside gang
members.  He also informed them there was
the threat of weapons and shootings taking place at the school.  Based upon his investigation, he requested
APD=s assistance. 


APD responded with marked and unmarked patrol cars, motorcycle units,
and liaison officers from other schools. 
Along with high school administrators, they positioned themselves around
the school perimeter along adjacent streets. 
From his vantage point, an assistant principal observed Appellant=s SUV driving on a street immediately adjacent to
the school.  He radioed Officer Glick.

Because of the timing of Appellant=s appearance, his reported involvement in the March 31
fight on campus, the serious assault that occurred April 3, and the consistency
and frequency with which Appellant=s name was mentioned by credible sources as being
involved in recent violence at the high school, Officer Glick radioed officers
keeping watch over the school perimeter and asked them to stop Appellant.  He requested that they identify him and find
out what he was doing in the area. 








Officer Clements was parked on the school perimeter looking for any
unusual activity that might indicate possible gang activity or fights.  After receiving Officer Glick=s call, he spotted and proceeded to stop Appellant=s SUV.  He
believed the stop was gang-related and there might be weapons involved.  Although Officer Clements pulled behind
Appellant=s SUV and activated the emergency beacons on his
motorcycle, Appellant continued traveling. 
Officer Clements considered this to be suspicious behavior.  He also noticed Appellant making furtive
movementsBmoving his right hand rapidly as though, in his
experience, Appellant may have been attempting to gain access to a weapon or
hide some object.  

Appellant came to a stop two blocks from the school.  Officer Clements approached the SUV and
removed Appellant from the vehicle. 
Because he was concerned Appellant=s furtive movements may have been intended to
conceal a weapon, he handcuffed Appellant and patted him down.  According to Officer Clements, Appellant was
not placed under arrest but was merely being detained for further
investigation.  After Officer Clements turned
Appellant over to Officer Ed Carroll, he returned to the SUV to search the
interior driver=s side for weapons and observed a clear plastic baggie
tucked between the front driver=s seat and the console.  He also observed a marihuana cigarette in the
SUV=s door handle.








Officer Carroll walked Appellant to the patrol car and asked Appellant=s name. 
Appellant identified himself and then, without questioning, said, AI=ll be honest with you, I have marihuana in the
vehicle.@  After
placing Appellant in the backseat of the patrol car, Officer Carroll approached
Officer Clements who had already located the marihuana in the SUV.  Officer Carroll returned to the patrol car
and placed Appellant under arrest for possession of marihuana.  He asked Appellant why he was at the high
school and Appellant responded he was there to pick up a friend.[4]  Subsequently, the trial court denied
Appellant=s motion to suppress.

On November 21, 2008, Appellant entered his guilty plea in open court
while preserving his right to appeal the trial court=s ruling on his motion to suppress.  Thereafter, he was sentenced and this appeal
followed.

                                                                   Discussion

Appellant asserts Officer Clements improperly detained him for
investigatory purposes because the officers lacked reasonable suspicion to
detain him.  He contends that, because
his initial detention was improper, the trial court should have excluded the
marihuana discovered in his SUV as the Afruit of the poisonous tree.@








I.          Standard of Review  

 A trial court=s ruling on a motion to suppress is reviewed for
abuse of discretion.  Balentine v.
State, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); Hudson v. State, 247
S.W.3d 780, 783 (Tex.App.BAmarillo 2008, no pet.).  In reviewing a trial court=s determination of the reasonableness of a temporary
investigative detention, appellate courts use a bifurcated standard of review.  Ford v. State, 158 S.W.3d 488, 493
(Tex.Crim.App. 2005).  Almost total
deference is given to a trial court=s determination of the historical facts that the
record supports especially when the trial court=s fact
findings are based on an evaluation of credibility and demeanor.  St. George v. State, 237 S.W.3d 720,
725 (Tex.Crim.App. 2007); Guzman v. State, 955 S.W.2d 85, 89
(Tex.Crim.App. 1997).  The same level of
deference is also afforded to a trial court=s
ruling on application of law to fact questions or mixed questions of law and
fact if the resolution of those questions also turns on an evaluation of
credibility and demeanor.  Montanez v.
State, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006).  However, if mixed questions of law and fact
do not fall within these categories, appellate courts may conduct a de novo review
of the trial court=s ruling. Guzman, 955 S.W.2d at 87.








When, as here, no findings of fact were requested nor filed, we view
the evidence in the light most favorable to the trial court=s ruling and assume the trial court made implicit
findings of fact supported by the record. 
See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).  If the trial court=s decision is correct on any theory of the law
applicable to the case, it will be sustained. Armendariz v. State, 123
S.W.3d 401, 404 (Tex.Crim.App. 2003); Ross, 32 S.W.3d at 855-56.  Further, the legal question of whether the
totality of the circumstances is sufficient to support an officer=s reasonable suspicion underlying an investigatory
detention is reviewed de novo.  See
State v. Sheppard, 271 S.W.3d 281, 286-87 (Tex.Crim.App. 2008); Kothe v.
State, 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004). 

Further, we interpret Appellant=s rights under Article I, Section 9 of the Texas
Constitution consistently with the interpretation of his Fourth Amendment
rights under the federal constitution by the United States Supreme Court and
the Texas Court of Criminal Appeals.  Sargent
v. State, 56 S.W.3d 720, 724 n.2 (Tex.App.BHouston
[14th Dist.] 2001, pet. ref=d). 
Accordingly, the standard for investigative stops is the same under the
Texas Constitution as under the United States Constitution.  See Rhodes v. State, 945 S.W.2d 115,
117 (Tex.Crim.App.), cert. denied, 552 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d
167 (1997). 








The threshold question we must determine is whether Officer Clements=s stop of Appellant was an investigatory detention
or an arrest because the nature of the detention determines the constitutional
parameters which apply to its legality. 
An investigatory detention is distinguishable from a custodial arrest,
and the use of handcuffs does not automatically convert a temporary detention
into a Fourth Amendment arrest.  Sheppard,
271 S.W.3d at 289.  An investigatory
detention, to be constitutionally valid, may be founded upon a reasonable,
articulable suspicion that the person detained is connected with criminal
activity, whereas an arrest, to pass constitutional muster, must be supported
by the greater conclusiveness of probable cause to believe that the person
detained has committed or is committing an offense.  Amores v. State, 816 S.W.2d 407, 411
(Tex.Crim.App. 1991).   

II.         Investigative Detention

A police officer may stop and briefly detain a person for investigative
purposes if, under the totality of the circumstances, the officer has
reasonable suspicion supported by articulable facts that the person detained
is, has been, or soon will be engaged in criminal activity.  Terry v. Ohio, 392 U.S. 1, 21-22, 88
S.Ct. 1868, 20 L.Ed.2d 889 (1968); Ford, 158 S.W.3d at 492.  An investigative detention occurs when an
individual is confronted by a police officer, yields to the officer=s display of authority, and is temporarily detained
for purposes of an investigation.  Johnson
v. State, 912 S.W.2d 227, 235-36 (Tex.Crim.App. 1995).  Whether reasonable suspicion exists is
determined by considering the facts known to the officer at the moment of
detention, and simple subjective good faith alone is not enough.  Davis v. State, 947 S.W.2d 240, 243
(Tex.Crim.App. 1997).








Prior to initiating an investigative detention, an officer must have
reasonable suspicion to believe that an individual is involved in criminal
activity.  Balentine, 71 S.W.3d at
768.  The Areasonableness@ of a temporary detention must be examined in terms
of the totality of the circumstances and will be justified when the detaining
officer has specific, articulable facts, which, when taken together with
rational inferences from those facts, lead him to conclude that the person
detained actually is, has been, or soon will be engaged in criminal
activity.  Ford, 158 S.W.3d at
492.[5]  There is no definitive bright-line test in
evaluating whether an investigative detention is unreasonable.  United States v. Sharpe, 470 U.S. 675,
685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). 
Common sense and ordinary human experience govern over rigid criteria.  Id.  









Whether there is a reasonable suspicion is dependent on both the
content of the information possessed by an officer and its degree of
reliability.  Alabama v. White,
496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).  Both Aquantity and quality@ must
be taken into account and considered in the Atotality
of the circumstances B the whole picture@.  Id. (quoting United States v.
Cortez, 449 U.S. 411, 417 (1981)). 
The factual basis for an investigative detention need not arise
solely from the officer=s personal observation but may derive from the
collective knowledge of other officers when there has been some degree of
communication between those officers; Woodward v. State, 668 S.W.2d 341,
344 (Tex.Crim.App. 1982) (op. on reh=g), cert. denied, 469 U.S. 1181, 105 S.Ct.
939, 83 L.Ed.2d 952 (1985), or information supplied by another person such as
an informant.  Brother v. State,
166 S.W.3d 255, 259-60 (Tex.Crim.App. 2005), cert. denied, 546 U.S.
1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); Martinez v. State, 261
S.W.3d 773, 776 (Tex.App.BAmarillo 2008, pet. ref=d).  Even
circumstances Awhich when viewed independently of each other could
be indicative of innocent action@ may give rise to reasonable suspicion; State v.
1998 Toyota Land Cruiser, Oklahoma Tag CMN-633 VIN JT3HT05J9W0007179, 277
S.W.3d 88, 91 (Tex.App.BAmarillo 2009, no pet.), and the possibility of an
innocent explanation does not deprive the officer of the capacity to entertain
reasonable suspicion of criminal activity. 
See T.L.O., 469 U.S. at 346; Toyota Land Cruiser, 277
S.W.3d at 91. 

While a tip by an unnamed informant of undisclosed reliability may
justify the initiation of an investigation, such a tip, standing alone, will
rarely establish the requisite level of reasonable suspicion necessary to
justify an investigative detention.  Florida
v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).  However, a citizen informant=s information may provide an officer with reasonable
suspicion if the information is corroborated by further indicia of reliability,
i.e., some additional facts
from which a police officer may reasonably conclude that the tip is reliable
and a temporary detention justified.  Brother,
166 S.W.3d at 258-59 (citing Alabama v. White, 496 U.S. at 330-31).  








Corroborating information that can give rise to reasonable suspicion
includes details that accurately predict the subject=s future behavior, link the subject to the alleged
criminal activity, or give a particularized and objective reason to suspect the
subject.  Glenn v. State, 967
S.W.2d 467 (Tex.App.BAmarillo 1998, pet. dism=d).  A citizen=s tip deserves great weight when there is a detailed
description of the wrongdoing along with a statement that the event was
witnessed firsthand; Illinois v. Gates, 462 U.S. 213, 234, 103 S.Ct.
2317, 76 L.Ed.2d 527 (1983), when a citizen puts their self in a position to be
held accountable for their intervention; State v. Stolte, 991 S.W.2d
336, 341 (Tex.App.BFort Worth 1999, no pet.), the citizen is not
connected with law enforcement or a paid informant; State v. Sailo, 910
S.W.2d 184, 188 (Tex.App.BFort Worth 1995, pet. ref=d), or there is sufficient evidence that an
informant=s information is reliable based on a past
relationship with law enforcement.  See
Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612
(1972); Dixon v. State, 206 S.W.3d 613, 616-17 (Tex.Crim.App. 2006).[6]  Although there is no per se rule
requiring independent police corroboration; Dixon, 206 S.W.3d at 618
(collected cases cited therein), when the reliability of the information is
increased, less corroboration is necessary. 
Stolte, 991 S.W.2d at 341.








Here, Officer Glick received reports from students of future
gang-related fights possibly involving weapons during the end of March and
early April.  Following an incident on
March 31, Officer Glick met with students whom he believed were credible and
reliable based on prior information he had received from them.  His student sources identified Appellant as
one of the persons that students had gathered to watch fight in the parking lot
of the school=s activity center. 
His sources also reported there would be another fight on April 3 and
Appellant would be involved.

As reported, on April 3, two students were assaulted after lunch and
one student sustained serious injuries. 
Although Officer Glick suspected the assaults were gang-related, neither
victim would cooperate.  Afterwards, he
began receiving reports that a gang-related fight was going to occur the next
day, April 4, and Appellant would again be involved.  

When Officer Glick arrived at school on April 4, students approached
him saying that gang members were coming to the school with weapons to shoot
people, including Officer Glick, if he got in the way.  His credible student sources verified the
reports and also reported Appellant would be involved.  At this point, Officer Glick believed he had
a credible threat of violence at the school accompanied by threats of weapons
and shootingsBand Appellant would be involved.  Based upon these reports, he coordinated a
response among school administrators and the APD.  

When, as predicted, Appellant was subsequently identified driving down
a street bordering the school, Officer Glick believed his appearance at the
school coupled with recent events that week and coinciding with reports of a
credible threat of violence involving Appellant, gave him reasonable suspicion
to request that Appellant be stopped, identified, and questioned regarding his
purpose for being in the area.  He
radioed his request to APD officers and Officer Clements initiated a stop of
Appellant=s SUV.  Under
these circumstances, we cannot say that Officer Glick=s assessment of the situation in light of his
specialized training and familiarity with the customs of the school was
unreasonable.  See United States v.
Arvizu, 534 U.S. 266, 276, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).[7]

In evaluating whether there is a reasonable particularized and
objective basis for detaining a person suspected of wrongdoing for further
investigation, government officials must consider the totality of
circumstances.[8]  Because Officer Glick=s information was based on face-to-face encounters
with students,[9]
some of which were known to have provided credible and reliable information in
the past,[10]
we find that Officer Glick had a reasonable suspicion to believe Appellant was
on the school=s perimeter for the purpose of engaging in criminal
activity that might involve weapons and shootings.[11]  Further, there is no evidence of record
indicating Officer Glick=s student sources were connected to law enforcement
or paid informants.

            That
Appellant was detained on a public street bordering the school rather than on
the school=s campus is of no moment. In light of the recent
events at the school as well as the reported threats of gang-related violence,
weapons, and shootings with Appellant being identified by credible sources as
one being involved, Appellant=s presence on the school=s immediate perimeter on the day the violence was to
occur required immediate action to assure the safety of students.  The officers did not need to wait until
Appellant Acrossed the line@ to
detain him.








Having determined Officer Clements=s investigative detention of Appellant was
reasonable under the circumstances, we find the trial court did not abuse its
discretion by finding the marihuana Officer Clements discovered in plain view
in the SUV was admissible at trial and denying Appellant=s motion to suppress.  Appellant=s sole
issue is overruled.          

                                                                   Conclusion

The trial court’s judgment is affirmed. 


 

Patrick A. Pirtle 

      Justice 


 

Publish.

      

 

 

 











[1]See Tex. Health & Safety Code Ann. ' 481.121(b)(1) (Vernon 2003).





[2]Officer Glick testified it was not
uncommon for hundreds of students to gather to watch a fight.





[3]Officer Glick also learned from his
sources that the rumored fight at Glenwood Park was a diversion intended to
draw attention away from the school where the actual fight was to occur.    





[4]There was no indication in the
record whether this statement was made prior to receiving warnings regarding
his right against self-incrimination. 
Neither was there any objection to Officer Carroll=s testimony and the voluntariness
of Appellant=s statements were not challenged at
the suppression hearing.  





[5]In New Jersey v. T.L.O., 469
U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the United States Supreme Court
stated:

 

[T]he requirement of reasonable
suspicion is not a requirement of absolute certainty: “sufficient probability,
not certainty, is the touchstone of reasonableness under the Fourth Amendment. .
. .”

 

469 U.S. at 346 (quoting Hill v.
California, 401 U.S. 797, 804, 92 S.Ct. 1106, 28 L.Ed.2d 484 (1971)).





[6]The same factors applicable when
establishing probable cause are also relevant in the reasonable suspicion
context except that a lesser showing of suspicion is required.  State v. Fudge, 42 S.W.3d 226, 239
(Tex.App.BAustin 2000, no pet.) (citing White,
496 U.S. at 328-29).  When reviewing an
investigative detention under either state or federal law, it is accepted that Alaw enforcement officers may stop
and briefly detain persons suspected of criminal activity on less information
than is constitutionally required for probable cause to arrest.@ 
Johnson, 912 S.W.2d at 235 (quoting Crockett v. State, 803
S.W.2d 308, 311 (Tex.Crim.App. 1991)).  





[7]Officer Glick served as school
liaison officer at the school for twelve years. 
ASchool officials have a specialized
understanding of the school environment, the habits of students, and the
concerns of the community, which enables them to >formulat[e] certain common-sense
conclusions about human behavior.=@ United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct.
1581, 104 L.Ed.2d 1 (1989) (quoting United States v. Cortez, 499 U.S.
411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).





[8]While making a determination
regarding the more stringent Fourth Amendment standard of probable cause to
search, the Texas Court of Criminal Appeals described the
totality-of-the-circumstances test as follows: 


 

[The] totality-of-the-circumstances
approach is far more consistent with our treatment of probable cause than is
any rigid demand that specific “tests” be satisfied by every informant=s tip.  Perhaps the central teaching of our decisions
bearing on the probable-cause standard is that it is a “practical, nontechnical
conception.”  In dealing with probable
cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual
and practical considerations of everyday life on which reasonable and prudent
men, not legal technicians, act. . . .

 

Dixon, 206 S.W.3d at 618 n.20 (quoting
Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983).





[9]A tip provided by an unidentified Aknown student@ may be relied on as added indicia
of reliability permitting a school official to rely on the tip.  In re K.C.B., 141 S.W.3d 303, 307
(Tex.App.—Austin 2004, no pet.). 
Moreover, Texas courts have distinguished between anonymous telephone
informants and informants that personally approach officers.  See, e.g., State v. Garcia, 25 S.W.3d
908, 912-13 (Tex.App.BHouston [14th Dist.]
2000, no pet.).  AUnlike a person who makes an
anonymous telephone call, an individual presenting himself to the officer in
person . . . puts himself in a position to be held accountable for his
intervention; thus, the reliability of the information he provides is
increased.@ 
Id. at 913.  





[10]See Adams, 407 U.S. at 146-47 (held that
informant personally known to officer provided Aenough indicia of reliability@ to create probable cause); Dixon,
206 S.W.3d at 616-17 (held that informant personally known to officer as
credible and reliable based upon past information provided Aenough indicia of reliability@ to create probable cause).  





[11]Officer Glick=s sources had verified
approximately 200 students gathered to witness a fight involving Appellant on
March 31, predicted the violent assault that occurred on April 3 and also
predicted that Appellant, a non-student, would be present at the school on
April 4 to participate in a gang-related fight involving weapons and shootings.
That a tip contains Apredictive information@ capable of verification is also
indicia of reliability.  See Fudge,
42 S.W.3d at 239-40.