FLAKE BARBER v. THE STATE.

No. 1347. Decided December 6, 1911.

Rehearing denied January 10, 1912.

1.—Perjury—Indictment—Obligation—Innuendo Averments.

In an indictment for perjury it is not necessary to allege by innuendo averments that the instrument is one creating or discharging an obligation, and where the indictment was based upon the false testimony concerning a certain receipt for money involved in a civil suit, and the indictment set out all the material testimony of defendant in said civil suit, and also all material matters which became a material inquiry in said civil suit between prosecutrix and defendant, showing that defendant offered said receipt in evidence as a valid defense, knowing at the time that it was a forgery, etc., and negatived said false testimony, the indictment was sufficient.

2.—Same—Evidence—Comparison of Handwriting.

Upon trial of perjury, which involved a certain spurious receipt, there was no error in admitting testimony showing that said receipt had been traced by placing it over the genuine signature of the prosecutrix, and permitting the witness to state his opinion, by a comparison of the handwriting in question after laying proper predicate therefor, that the signature on said receipt was not that of prosecutrix.

3.—Same—Evidence—Transcript of Stenographic Notes.

Upon trial of perjury, there was no error to admit in evidence a transcript of the original stenographic notes of the testimony of the defendant given in a certain civil suit out of which the perjury arose; it having first been shown that the stenographer was qualified and the official reporter of the court, and that his original shorthand notes had been lost and could not be found after diligent search.

4.—Same—Evidence—Receipt—Obligation.

Where the perjury arose out of a certain spurious receipt involved in a civil suit, and which was given ostensibly by prosecutrix for the payment of money, there was no error in admitting testimony with reference to said civil suit, the pleadings in said case, and all the testimony with reference to said receipt, to show that the defendant falsely testified that prosecutrix had given him said receipt in payment of defendant's note, as also the checks and drafts used in payment thereof.

**5.—Same—Cross-Examination.**

There was no error in permitting the cross-examination of defendant's witnesses as to their whereabouts during the trial of the civil suit out of which the alleged perjury arose, and why they did not testify in that suit.

**6.—Same—Charge of Court—Requested Charges—Credible Witness.**

In a prosecution for perjury, where the court charged the law of the case and that a credible witness was one who being competent to give evidence is worthy of belief, there was no error in refusing requested charges which were covered by the main charge, or which singled out certain testimony.

**7.—Same—Charge of Court—Falsity of Testimony.**

In a prosecution for perjury, if any of the false matters charged and negatived in the indictment are proven, it is sufficient, and it is not necessary to prove the falsity of all; and where the court instructed the jury with reference to such false statement and that they must believe it false beyond a reasonable doubt, there was no error.

**8.—Same—Motion for New Trial.**

Where the motion for new trial does not point out any error in the charge of the court, but is general in its character, the same can not be considered on appeal.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of perjury the evidence sustained a conviction, there was no error.

**10.—Same—Misconduct of Jury—Discretion of Court.**

Where the alleged misconduct of the jury was passed upon by the trial court and no abuse of discretion was shown, there was no error.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John W. Moyers* and *E. B. Ritchie,* for appellant.—On question of the insufficiency of the indictment: Anderson v. State, 20 Texas Crim. App., 312; McMurry v. State, 38 Texas Crim. Rep., 521; Rosebud v. State, 50 Texas Crim. Rep., 475; Buller v. State, 28 S. W. Rep., 465; Morris v. State, 83 id., 1126; Martin v. State, 26 id., 400; Misener v. State, 31 id., 858; Garret v. State, 39 id., 108.

On question of comparison of handwriting: Heacock, 13 Texas Crim. App., 97.

On question of misconduct of jury: Mitchell v. State, 36 Texas Crim. Rep., 278; McWilliams v. State, 32 id., 269; Tate v. State, 38 id., 261; Darter v. State, 39 id., 40; Hargrove v. State, 33 id., 431; Helvenston v. State, 53 id., 636.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with perjury, and when convicted, his punishment was assessed at two years confinement in the penitentiary.

The evidence in this case would indicate that appellant was a land agent, and as such agent a number of years ago, was attending to business for Mrs. Shannon, now Perry. At that time, he borrowed from her $1,000, giving his note due in two years. Shortly thereafter, Mrs. Shannon made a conditional trade for some other property, and placed in appellant's hands, a check for $1,000, endorsing thereon "earnest money and first payment on Chas. Barbier lot." Appellant cashed this check and placed the money to his credit in the bank. The trade with Barbier was not completed, and Mrs. Shannon instructed appellant to use the money in paying a note she was due Cicero Smith. On September 23, 1907, appellant did pay to Cicero Smith this $1,000 and took up a note due by Mrs. Shannon to Smith. This note, with Mrs. Shannon's name signed thereto, thus came into possession of appellant. Nothing more was done about the matter until the note given by appellant to Mrs. Shannon became due, when Mrs. Shannon sent the note to an attorney for collection. The note was abstracted from this attorney's possession. Suit was brought, alleging the loss of the note, when appellant filed an answer in that suit, asserting that he had paid the Cicero Smith note out of his individual funds, and that Mrs. Shannon had given him a receipt to that effect and delivered to him his note. He had his note, that the attorney said had been abstracted out of his office, in his possession, and also an instrument in writing as follows:

"9/23, 1907.

This to apply on note dated June 26, 1907, due June 26, 1909, for $1000.

(Signed) Mrs. Nona Shannon.

Witness, J. H. Dodd."

Appellant testified that Mrs. Shannon had executed this instrument and delivered it to him, and it was intended as a receipt and acknowledgement of payment of the note due by him to her, and she had subsequently delivered to him his note. It will be noticed that it bears the same date as the check given by defendant to Cicero Smith. This was the issue in the civil suit, and the indictment for perjury is based on the testimony of defendant in that suit. The assistant attorney-general has so fully briefed this case, we have adopted his brief, in the main, as our opinion in this case, it being as follows:

"Appellant's brief assigns as the first error that the indictment is insufficient to charge any offense and insufficient to charge perjury. The indictment charges that defendant in the case of Perry v. Barber testified and swore: 1st. That he took a receipt from Mrs. Shannon (Perry). 2d. That the receipt he took from her was the one set out in the indictment and offered in evidence in the trial of Perry v. Barber. 3d. That he saw her sign the receipt. 4th. That she delivered this receipt to him. 5th. That he wrote the receipt and that

she signed it after he wrote it.  6th.  That J. H. Dodd was present at said signing of the receipt, and that Dodd saw her sign the name. The indictment also states that at the trial of said case of Perry v. Barber, it 'became and was a material inquiry:' 1st.  'Whether . . . the said Mrs. Shannon (Perry) had, on or about the 23d day of September, 1907, signed and delivered a receipt to the said Flake Barber,' and 2d.  'Whether or not she signed and delivered the written instrument above set out to the said Flake Barber,' and 3d.  'Whether one J. H. Dodd saw the said Mrs. Shannon sign said receipt,' and 4th. 'Whether the said Flake Barber took such a receipt from said Mrs. Shannon,' and 5th.  'Whether the said J. H. Dodd was present and saw the said Mrs. Shannon sign the receipt,' and 6th.  'Whether the said Flake Barber saw the said Mrs. Shannon sign the receipt.'

"Not only does the indictment say in so many words that all of the above six matters 'became and was a material inquiry' in the case of Perry v. Barber, but it further alleges that that case was a 'certain civil judicial proceeding in said District Court, wherein Mrs. Nona Perry (formerly Shannon) joined by her husband, C. L. Perry, were plaintiffs and Flake Barber was defendant, . . . wherein issue was therein duly joined . . . and in the said civil judicial proceeding the said plaintiff . . . was suing . . . the said Flake Barber, upon an action of debt and seeking to recover judgment against the said Flake Barber, for a debt of one thousand dollars, with accrued interest, and also seeking to recover judgment upon various other debts and various other sums of money, alleged to be due to her by the said Flake Barber.'  The indictment then alleges that $1,000 of this indebtedness was evidenced by a note for that amount dated June 26, 1907, and executed by defendant to Mrs. Nona Shannon (Perry), and was to become due on June 26, 1909.  The indictment then sets out a sort of receipt to him from her of $1,000 'to apply on note dated June 26, 1907, due June 26, 1909.'  The indictment also shows that defendant in said suit set up 'in his answer thereto, among other defenses, that he held against the said Mrs. Nona Perry, formerly Mrs. Nona Shannon, a receipt for the sum of one thousand dollars against the said note for a like sum herein above mentioned, which receipt is in substance as follows,' etc.  Then follows a quotation of the receipt.  Thus it will be seen that there are full allegations in the indictment *showing* the materiality of the testimony on the above six matters, as well as stating in so many words that they were material to that suit.

"The indictment is, therefore, amply sufficient.  This covers the 1st, 2d, and 3d assignments of error in appellant's brief.  The fourth assignment of error by appellant in his brief is that the receipt standing alone is meaningless, and, therefore, is not either an obligation nor the discharge of an obligation, standing alone.  This is not a case of forgery, and hence an innuendo explaining this instrument to be one creating or discharging an obligation is unnecessary.  In perjury, if one offers an instrument in evidence that is totally worthless, yet, if

the offerer, believing it to be apparently valid as a defense, swears it was executed by the other party at a time of a payment of the money referred to in it, this is perjury if the other party did not in fact execute it, although it is and always was totally void. A mistake of law in this line will hardly excuse. Besides, if at the time of a payment, any writing is made concerning the payment or the obligation discharged, even though the writing be void, it is part of the res gestae of the payment, no matter how worthless it is. Now if the allegations of the indictment show any such a situation as this, then it is sufficient.

"It alleges, as above set forth, that this instrument was pleaded by defendant as defense in the civil suit, that he pleaded in that suit its execution by Mrs. Perry and offered it in evidence, and testified to the six things concerning it as are set forth heretofore herein. It was material, because it was an instrument which, with his oral explanations, was part of the res gestae of payment, and a receipt for said sum of $1,000. None of this was true, it was all negatived in the indictment, and was disproved by the State in the trial below of the case at bar.

"Appellant's fifth assignment in his brief claims that the indictment did not negative the false testimony. We have set forth above what the false testimony was, and will now show the negative averments; the indictment says: 'Whereas in truth and in fact the said Flake Barber (1) Did not take the said receipt from the said Mrs. Nona Shannon. (2) And the said Flake Barber did not see the said Nona Shannon sign said receipt. (3) And the said Nona Shannon did not sign said receipt or the said instrument so claimed by said Barber to be a receipt. (4) And in fact and in truth the said receipt is a forgery. (5) And in fact and in truth the said J. H. Dodd was not present and did not see the said Mrs. Nona Shannon sign said receipt. (6) And in fact and in truth the said receipt or written instrument so claimed by the said Flake Barber to be a receipt, was never delivered to him by the said Mrs. Nona Shannon nor by her authority.'

"The indictment then concludes as follows:

"'Mrs. Nona Shannon, and Mrs. Nona Perry are one and the same person. And which said testimony and statements so made by the said Flake Barber, as aforesaid, were each and all willfully and deliberately false, and the said Flake Barber knew that each and all of them were false when he made them, against the peace and dignity of the State.'

"Thus it will be seen the false matter was all amply negatived. Appellant's sixth assignment is that the court erred in permitting the State witness, Penix, to compare the alleged forged signature to the note set out in the indictment with the genuine signature of Mrs. Shannon (Perry) executed to a note by her to one Smith, the comparison being done by placing the alleged forged signature over the genuine signature of Mrs. Shannon (Perry) to Smith's note, and then

placing both instruments before the light so as to show that the alleged forged signature has been made by tracing the genuine signature on the forged paper; the Smith note having been paid by defendant with Mrs. Shannon's money and the Smith note thus being in the hands of defendant before the forgery is alleged to have taken place.

"There are four propositions by appellant under this assignment. First. This proposition asserts that nonexperts can not give such evidence concerning handwriting. As to this, we say that it is not necessary for one to be an expert in order to allow him to show such a comparison of handwriting. Any intelligent witness that can make such a comparison may do it without his being an expert, who shows he is familiar with the handwriting. 2 Bishop's New Crim. Proc., sec. 432b; 1 Bishop's New Crim. Proc., secs. 1177-1178. These last two section of Bishop show the philosophy of this rule. Second. The second proposition under this assignment is that the conclusions of the witness as to whose handwriting it was were argumentative and should have been left to the jury, unless he was an expert. As to this, we say that from the earliest period, nonexpert witnesses who are familiar with the handwriting in question, have been allowed to give their opinion after making such comparisons as were made by the witness, Penix, in this case. 1 Greenleaf on Ev., sec. 440; 1 Bishop's New Crim. Proc., secs. 1177-1178; 2 id., sec. 432b. Indeed, the right to use the expert in such matters, and as to handwriting, was anciently thought to be not as good evidence as that of the nonexpert who shows a familiarity with the writing, and the right to use the expert became a rule 'only by a squeeze.' 2 id., sec. 432c. Third. This, likewise, is on the alleged usurpation by the witness of the jury's province to draw conclusions and state opinions, and is covered by the foregoing propositions. Fourth. This is to the effect that the instrument forged was not an instrument creating an obligation or discharging one, and, therefore, was incompetent and immaterial.

"This case is perjury and not forgery, and as defendant had testified in the civil suit that Mrs. Shannon had executed and delivered to him the instrument as a receipt, it became material in this case whether or not she had in fact executed the instrument as testified to by defendant. The explanation of the judge in allowing this bill of exceptions, puts it beyond cavil that there was no error in allowing this comparison of handwriting and the giving of the opinion of the witness. He knew Mrs. Shannon's signature, had seen her write many times, and had many dealings with her. Indeed, within the rule announced in Crow v. State, 33 Texas Crim. Rep., 264, he may even be regarded as an expert as to Mrs. Shannon's handwriting.

"The mere fact that a witness, after testifying to all the facts leading to the inevitable conclusion that an instrument is a forgery, declares it to be such, is not a harmful or reversible error. Hughes v. State, 59 Texas Crim. Rep., 294.

"Appellant's seventh assignment in his brief is that it was error

to allow witness, Towns, to read in evidence a transcript of the original stenographic notes of the testimony of defendant given in the civil suit. In approving the bill the court thus qualifies it: 'Approved with the explanation that the witness, P. L. Towns, testified that he had been court reporter for the 29th Judicial District of Texas for five years, and had prior thereto been court reporter in Kentucky, and that he was experienced and capable in said work; that he took the testimony of Flake Barber, when said Barber testified as a witness in the civil suit correctly, and accurately and verbatim, and that he transcribed said testimony so taken by him correctly and accurately from his shorthand notes of said testimony taken upon the trial of the civil cause, and that the transcript of said notes and said testimony shown him upon this trial was a verbatim copy of the notes taken upon said civil trial, and that said notes and the transcript thereof contained a true and correct verbatim report of the testimony of said Flake Barber given upon said civil cause; that his shorthand notes of said testimony were lost and that he had made diligent search for said shorthand books of said testimony, but that same could not be found.' This question has been before this court frequently, and decided adversely to appellant's contention. Roquemore v. State, 59 Texas Crim. Rep., 568; Cornelius v. State, 54 Texas Crim. Rep., 173; Casey v. State, 50 Texas Crim. Rep., 392.

"Appellant's eighth assignment is that the receipt was not the creation or discharge of an obligation and, therefore, there was no perjury. As hereinbefore stated, the question in this case was, did defendant falsely testify in the civil suit? He testified that she had given it to him as a receipt, and by his testimony, sought to so apply it, and it was proper to make inquiry in regard to the truth of this testimony, and all testimony having a direct bearing thereon is admissible in evidence.

"Appellant's ninth assignment complains of the admission in evidence of the answer of defendant in the said civil suit of Perry v. Barber, reciting things that were evidence against him in this case. The answer was sworn to before a notary public, and the notary's jurat was also read.

"A party's pleadings are always evidence against him, and if sworn to, are with greater reason, evidence against him of the strongest kind. The court's explanation of this bill of exceptions shows that Mrs. Shannon identified the signature to this pleading as that of defendant. In the charge the purpose for which this testimony was admissible was stated and limited to that alone, and there was no error in admitting it.

"The tenth, eleventh, twelfth, and thirteenth assignments in appellant's brief refer to checks and drafts used in payment of the Smith note. As it was by this means that defendant got possession of that note and traced its signature on the receipt that was forged, if he did

do so, and his testimony in regard thereto being the basis of the perjury, there can be no doubt that there was no error in this respect.

"There was no error in allowing the cross-examination of defendant's witnesses in this case, as to their whereabouts during the trial of the civil suit and why they did not testify in that suit. This was proper cross-examination, and, therefore, the appellant's fourteenth assignment in his brief can not be sustained.

"The refusal of the charges requested as set forth in the various assignments in appellant's brief was not error, because insofar as applicable fully covered in the general charge.

"Credibility of a witness is always a matter for the jury, and one need not have a character entirely above reproach in order to be credible, besides the word 'credible' is an ordinary good English word and needs no explanation or definition to the jury. Douglass v. State, 33 S. W. Rep., 228, and cases there cited. The special charges all related to the credibility of the witnesses, Dodd and Mrs. Perry. The court, in his charge, instructed the jury: 'Our law provides that no person shall be convicted of perjury except upon the testimony of two credible witnesses or of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statements under oath. A credible witness within the meaning of the last preceding paragraph of this charge means one who, being competent to give evidence, is worthy of belief.' In Cordes v. State, 54 Texas Crim. Rep., 204, it is held: There was no error in refusing defendant's special charge which singled out certain testimony for the jury to pass on.

"The charge complained of in the seventeenth assignment of appellant's brief is sufficiently clear not to confuse, and the entire charge is given in a fair presentation of the law to the jury.

"If any of the false matters charged and negatived were proven, conviction was proper and it was not necessary to prove the falsity of all of the matters charged as false in order to convict. This is fundamental in all cases when many acts are charged and one is given. However, the court, in his charge, instructed the jury as to what the alleged false statement consisted, and informed them they must believe it false beyond a reasonable doubt, or acquit.

"Brown v. State, 40 Texas Crim. Rep., 48, cited by appellant, is an authority in the State's favor. There the matters sworn to were all stated together in solido, and the negative of them was in solido also. As the court there says, 'all of which together are alleged to be material, and the *falsity of all* is charged.' Here in the case at bar, six different things are charged as material, five of the six are separately and specifically set out as being what defendant swore to, and then the whole original six are separately set out as false and duly negatived as to each one.

"The eighteenth and twentieth assignments refer to the alleged misleading nature of the charges. They were sufficiently clear and intelligible. Besides, in the motion it is not attempted to point out any

error therein, but the complaint merely is that the court erred. This is too general to be considered.

"The twenty-first assignment is as to the sufficiency of the evidence. The State's evidence making a case beyond a reasonable doubt, this was a matter for the jury to determine, and their verdict is amply supported.

"The twenty-second assignment refers to misconduct of the jury. The court below heard evidence pro and con on this subject and denied the new trial. In such cases the lower court is deferred to by this court and the finding will not be disturbed except in cases of manifest injustice resulting from manifest irregularity to such an extent as to amount to an abuse of discretion in the lower court to refuse a new trial. Such is not the case here. The case was fairly tried, the charge was clear and sufficient, and from the standpoint of justice as dispensed by man in his imperfect state of existence, it would seem that the right verdict and judgment have been rendered in this case. From the fact that the jury assessed the lowest penalty permissible under the law, it is evident that the jury was not influenced by the matter complained of in this assignment."

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 10, 1912.—Reporter.]