**Affirmed and Opinion filed July 10, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00616-CR

---

**BENJAMIN CLAUDE COMPERRY, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 5**

**Harris County, Texas**

**Trial Court Cause No. 1734106**

---

## OPINION

Appellant Benjamin Claude Comperry pleaded "guilty" to misdemeanor driving while intoxicated after the trial court denied his motion to suppress the results of a chemical analysis of his blood taken involuntarily. On appeal, Comperry contends the trial court abused its discretion in denying the motion to suppress by applying the wrong

standard to determine whether Transportation Code section 724.012(b)(3) justified a warrantless search for his blood. We affirm.

I

In December 2010, Officer Bennie Boles of the La Porte Police Department arrested Comperry for DWI after he was involved in a car accident. Boles took Comperry to the La Porte jail, where Boles obtained Comperry's criminal history from a printout of information contained in the Texas Crime Information Center (TCIC)[1] database. Boles reviewed Comperry's criminal history to determine whether Comperry had been convicted of DWI on two or more previous occasions. If so, Boles understood that Chapter 724 of the Transportation Code required him to obtain a specimen of Comperry's blood without the necessity of a warrant or Comperry's consent. *See* Tex. Transp. Code § 714.012(b)(3)(B).

Comperry's criminal history information showed four "Event Cycles" consisting of a DWI arrest in Harris County, a DWI arrest in Galveston County, and two unrelated misdemeanor arrests. Event Cycle 1, reflecting the Harris County DWI arrest, showed that in July 2006, Comperry was arrested for DWI, pleaded "guilty," and was convicted in October 2006 of class B misdemeanor DWI in the County Criminal Court at Law No. 5, for which he received a three-day jail sentence and a $600 fine.

Event Cycle 2, reflecting the Galveston County arrest, showed that in August 2006, Comperry was arrested for DWI. This event cycle reflected that Comperry pleaded "no contest," was convicted in April 2008 of class B misdemeanor DWI in the Justice of the Peace Court for Precinct 7 of Galveston County, and sentenced to three days in jail with a $100 fine. In the same event cycle, however, the data also reflected that Comperry

---

[1] The State refers to this database as the TCIC/NCIC database, but it does not explain these acronyms. In the interest of consistency and brevity we will refer to the database as the TCIC, as Comperry does. *See Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002) (stating that the TCIC is "a statewide criminal information database used by law enforcement agencies"); *see also* Tex. Code Crim. Proc. art. 60.02 (authorizing computerized criminal history record information systems).

pleaded "no contest" to obstructing a highway or passageway in the same court, was convicted of a class B misdemeanor, and received the same sentence of three days in jail with a $100 fine. The disposition of the obstructing-a-highway conviction reflected: "CONVICTED - LESSER CHARGE."

At the hearing on Comperry's motion to suppress, Comperry stipulated at the outset that he was arrested without a warrant, there was reasonable suspicion for the stop, and there was probable cause for the DWI arrest. Officer Boles was the State's only witness. Boles testified that, after taking Comperry to jail, he reviewed Comperry's criminal history from the TCIC database and determined that Comperry had been convicted of DWI on two previous occasions. Boles read the statutory warnings contained in the DIC-24 form to Comperry, and then asked Comperry if he would voluntarily submit to a blood test. Comperry refused and signed the DIC-24 form acknowledging his refusal.

Boles also testified that he saw the additional entry in Event Cycle 2 reflecting the obstructing-a-highway conviction, but he believed that Comperry had been charged with and convicted of a second offense arising out of the same transaction as the Galveston County DWI. Boles explained that he believed this because "there was nothing to indicate there weren't two charges filed, and because the TCIC printout showed that Comperry had been convicted of two different offenses on the same date." Boles did not recall whether Comperry told him the Galveston case was reduced to obstructing a highway, but he said that even if Comperry had told him that, it would have no bearing on the situation because he believed the TCIC data to be a reliable and credible source of information.

Comperry testified that he was not convicted of DWI as a result of the Galveston County arrest; he was convicted only of obstruction. Comperry also testified that when he refused to willingly give a specimen of his blood, Boles stated that he believed Comperry had been convicted of DWI on two previous occasions, thus invoking the mandatory

3

provision of section 724.012(b)(3) of the Transportation Code. In response, Comperry testified that he explained to Boles that he had been convicted of DWI only one time and that the Galveston arrest resulted in a conviction only for the lesser charge of obstructing, not a second DWI conviction. According to Comperry, Boles made no effort to confirm whether his statements were correct.

A day after hearing evidence and arguments, the trial court orally announced its findings of fact and conclusions of law. The trial court's findings and conclusions included the following:

> Based upon the hearing that we had yesterday in court, based upon the testimony and argument of counsel, while I find this is a very difficult decision because this area is unsettled because it's new, I'm making the following findings: That the officer, Officer Boles, appeared credible in his testimony. He testified that he arrested the defendant for driving while intoxicated. There was a stipulation of the parties, as I recall, that the arrest was made upon probable cause without a warrant. Further, the officer testified that the defendant refused to give a breath sample voluntarily, and we received written evidence to that effect in State's Exhibit No. 2 [the DIC-24].

> Officer Boles testified that he checked at the time of the defendant's arrest for his criminal history through TCIC/NCIC; that he received that information and that he same information was captured in State's Exhibit No. 3. That he reviewed that information at the time of the defendant's arrest and based upon the information in Cycles 1 and 2, he formed the belief that the defendant had been convicted twice before of driving while intoxicated, once in Harris County and once in Galveston County. Based upon that belief, Officer Boles then required a blood draw from the defendant, based upon Transportation Code, Section 724.012, and in that section we would refer to (b)(3)(B).

> Further, I find that TCIC/NCIC is a credible source of criminal history information, [and] that TCIC printouts are normally reliable information regarding criminal histories. I'll further find that in this case the information for Cycle No. 2 in State's Exhibits No. 3 is confusing and possibly incorrect in the way it is displayed. I will further find and, I believe, [it] was stipulated by the parties that this defendant actually has one prior conviction for DWI . . [r]ather than two prior convictions for

4

driving while intoxicated. Based upon the evidence and the law presented and the arguments, I will conclude that Officer Boles was reasonable in his belief that the defendant had two prior convictions for driving while intoxicated, having relied upon normally reliable information from a credible source in forming that belief. I'll further conclude that Officer Boles required the blood draw as a result of this reasonable, though incorrect, understanding of the defendant's criminal history.

The trial court also found that Boles did not remember whether Comperry had tried to correct his misunderstanding of the Galveston conviction, but that "even if the defendant had so informed him, [Boles] would have accepted the information in the TCIC over what any defendant, not just what Mr. Comperry had told him."

The trial court denied Comperry's motion to suppress, and he pleaded guilty.

## II

In one issue, Comperry contends that the trial court erred in denying his motion to suppress the blood test results. He frames the issue as "[w]hether an ambiguous, 'confusing and possibly incorrect' report of a prior DWI conviction, even from a credible source, constitutes 'reliable information'" for purposes of section 724.012(b)(3).

## A

In reviewing a trial court's rulings on a motion to suppress, we give almost total deference to a trial court's determination of historical facts that are supported by the record and to its determination of mixed questions of fact and law that turn on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *See id.* We review the evidence in the light most favorable to the trial court's ruling. *See Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

B

Chapter 724 of the Transportation Code provides that a person who operates a motor vehicle in a public place or a watercraft while intoxicated is considered to have consented to submit to the taking of a breath or blood specimen for analysis to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance in the person's body. *See* Tex. Transp. Code § 724.011; *see also Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (recognizing that implied consent law "gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant"). If a person arrested for a specified offense refuses the officer's request to submit to the taking of a specimen, Section 724.012(b) requires a peace officer to compel the taking of a specimen of the person's breach or blood in the following circumstances:

> (1) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
>
> > (A) any individual has died or will die;
> >
> > (B) an individual other than the person has suffered serious bodily injury; or
> >
> > (C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment;
>
> (2) the offense for which the officer arrests the person is an offense under Section 49.045, Penal Code; or
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> > (A) has been previously convicted of or placed on community supervision for an offense under Section 49.045, 49.07, or 49.08, Penal

6

Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections; or

> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

*Id.* § 724.012(b). The peace officer designates the type of specimen to be taken. *Id.* § 724.012(c).

The parties agree that the operative provision in this case is section 724.012(b)(3)(B), which requires the officer to take a specimen of blood or breath if, at the time of the arrest, the officer "possesses or receives reliable information from a credible source" that the person arrested has been previously convicted of "an offense under Section 49.04" of the Penal Code on two or more occasions. Penal Code section 49.04 governs the offense of DWI. *See* Tex. Penal Code § 49.04 (providing that a person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place).

Comperry concedes that the TCIC report Boles used was from a credible source, but he argues that the information purporting to show a second DWI conviction was not reliable because it was not only inaccurate, but also facially irregular, ambiguous, and, as described by the trial court, "confusing and possibly incorrect." According to Comperry, the trial court conflated the reliability and credibility requirements when it held that the officer's belief was reasonable, effectively determining that the facially irregular report was reliable based on the credibility of the source alone. Comperry argues that the plain language of the statute requires an independent review of both the credibility of the source and the reliability of the conviction information, and conflating these requirements nullifies the Legislature's intent to limit warrantless searches. *See Badgett v. State*, 42 S.W.3d 136, 139 (Tex. Crim. App. 2001) (explaining that statutes are to be construed, if

at all possible, so as to give effect to all of its parts, and so that no part is to be construed as void or redundant).

Comperry further argues that the trial court erroneously substituted a "reasonable belief" standard for the plain-language requirement that an officer possess "reliable information from a credible source." Comperry contrasts the language used in subsection (b)(3) with the language of subsection (b)(1), which expressly provides for reliance on the officer's "reasonable beliefs" when accidents involving injuries or fatalities are involved. *See* Tex. Transp. Code § 724.012(b)(1). According to Comperry, when section 724.012(b) was amended to add subsection (b)(3), "the Legislature clearly intended a purely objective examination of the information, as opposed to the officer's subjective belief, when he relies on second-hand reports of past convictions." *See* § 742.012(b)(3); *see also* The Nicole "Lilly" Lalime Act, 81st Leg., R.S., ch. 1348, § 18, 2009 Tex. Gen. Laws 4267 (amending section 724.012 to expand circumstances in which police are authorized to obtain a blood or breath specimen). Thus, Comperry argues that the Legislature created a separate standard governing searches predicated on prior convictions when it created the new subsection pertaining to those cases. Comperry maintains that the lower court abused its discretion when it denied his motion to suppress by ignoring this new standard and replacing it with a "reasonable belief" standard.

Statutory construction is a question of law we review de novo. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). When interpreting statutory language, we focus on the collective intent or purpose of the legislators who enacted the legislation. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). We construe a statute according to its plain meaning without considering extratextual factors unless the statutory language is ambiguous or imposing the plain meaning would cause an absurd result. *Id.*; *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007). Applying the canons of construction to determine the meaning of a statute, we presume that (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is

8

intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. *Clinton*, 354 S.W.3d at 800.

Section 724.012(b)(3) provides that the officer is required to take a person's blood or breath sample if at the time of the arrest the officer "possesses or receives reliable information from a credible source" that the person has previously been convicted of specific enumerated offenses, including DWI, two or more times. *See* Tex. Transp. Code § 724.012(b)(3)(B). The terms "reliable information" and "credible source" are not defined in the statute.

Statutory terms not legislatively defined are generally construed as common usage allows, but terms that have acquired a known and established legal meaning are generally construed in their legal sense. *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000). "Reliable" is defined in Black's Law Dictionary as "[t]rustworthy" and "worthy of confidence." *Black's Law Dictionary* 1160 (5th ed. 1979). In the context of probable cause to search or arrest, trust and confidence are often acquired through the communication of consistently dependable or truthful information. *See Dixon v. State*, 206 S.W.3d 613, 617 n.15 (Tex. Crim. App. 2006) (noting that a confidential informant's reliability is based on his "information track record" rather than his conviction record); *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (holding information from informant was sufficiently reliable to support issuance of search warrant when informant demonstrated personal knowledge of the matters asserted and admitted to being a drug trafficker; the court noted that "[a]n admission against penal interest . . . is a factor indicating reliability").

Akin to "reliable," Black's defines "credible" as "[w]orthy of belief; entitled to credit." *Black's Law Dictionary* 330.[2] Thus, it has been said that a "credible witness" is

---

[2] Even if we concluded that the terms "reliable" and "credible" did not have established legal meanings, the common usage of the words is virtually indistinguishable from the legal usage. Webster's Third New International Dictionary defines "reliable" as "worthy of dependence or reliance" and "of proven

9

one who is competent to testify and "worthy of belief." *Ashley v. State*, 237 S.W.2d 311, 313 (Tex. Crim. App. 1951) (op. on reh'g); *Brown v. State*, 254 S.W. 995, 995 (Tex. Crim. App. 1923); *see also Barber v. State*, 142 S.W. 577, 581 (Tex. Crim. App. 1911) ("Credibility of a witness is always a matter for the jury, and one need not have a character entirely above reproach in order to be credible; besides, the word 'credible' is an ordinary good English word, and needs no explanation or definition to the jury."). Likewise, the Court of Criminal Appeals has stated that a "credible person" was one "worthy of belief" within the meaning of the statutory provision authorizing an officer to pursue and arrest without a warrant a felony offender who is about to escape, "on the representation of a credible person." *See Maloy v. State*, 582 S.W.2d 125, 128 (Tex. Crim. App. 1979); *see also* Tex. Code Crim. Proc. art. 14.04 ("Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.").

Significantly, "reliable" and "credible" are often paired in the context of evaluating whether probable cause exists to conduct a search and seizure or arrest. *See, e.g., Dixon*, 206 S.W.3d at 616–17, 619 (holding that confidential informant was "credible and reliable" when officer had known him more than a year and the information he provided in the past had always been shown to be true, and concluding that informant's veracity and basis of knowledge were sufficient to establish probable cause for search of appellant's car); *Hall v. State*, 795 S.W.2d 195, 197 (Tex. Crim. App. 1990) ("Inherent in the totality of the circumstances test is whether the affiant's reliable and credible informant observed conduct which was sufficiently suspect so as to be more consistent with criminal that innocent activity."); *State v. Hill*, 299 S.W.3d 240, 244 (Tex.

---

consistency in producing satisfactory results." *Webster's Third New International Dictionary* 1917 (1993). Webster's defines "credible" as "capable of being credited or believed" and "worthy of belief." *Id.* at 532.

App.—Texarkana 2009, no pet.) ("Hearsay from unnamed informants may be credited by showing the informant has given reliable, credible information in the past."); *Thacker v. State*, 889 S.W.2d 380, 387 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (holding that a search warrant may be predicated on hearsay information furnished to the affiant if it is shown to be credible or reliable); *Nelson v. State*, 855 S.W.2d 26, 30 (Tex. App.—El Paso 1993, no pet.) (holding that officer's personal knowledge and "reliable information from a credible source" supported warrantless arrest of aggravated-robbery suspect); *Tribble v. State*, 792 S.w.2d 280, 284 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (holding that a private citizen who contacts the police for the sole purpose of reporting a criminal act is inherently credible and reliable); *Mejia*, 761 S.W.2d at 38 (holding informant's demonstration of reliability "reinforced" his credibility).

In *Illinois v. Gates*, the United States Supreme Court held that probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular place. *See* 462 U.S. 213, 238 (1983); *see also Whaley v. State*, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985) (adopting the totality-of-the-circumstances test of *Illinois v. Gates*). Under the totality-of-the-circumstances analysis, the *Gates* court explained that an informant's veracity, reliability, and basis of knowledge are all "highly relevant" elements when determining the value of an informant's report, but they should not be understood as entirely separate and independent. *Gates*, 462 U.S. at 230; *see Dixon*, 206 S.W.3d at 616. Instead, these elements "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" whether probable cause exists. *Gates*, 462 U.S. at 230.

Taking into account the consistency of the words "reliable" and "credible" as applied in legal contexts, and having reviewed the extensive use of the words together in the law of search and seizure, we conclude that these words have specific legal meanings that are closely related and intertwined. We presume the Legislature also recognized that

11

reliability and credibility are often intertwined in the realm of criminal law, and so when drafting section 724.012(b)(3) purposely prescribed the requirement of "reliable information from a credible source" to reflect the commonly understood use of the words. *Miller v. State*, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000) (stating that when determining the legislature's intent in drafting a statute, we presume that the legislature is aware of case law affecting or relating to the statute).

Although Comperry contends that "reliable" and "credible" must be separately evaluated or the legislature's intent will be nullified, we disagree. The Court of Criminal Appeals has recognized that statutory terms may overlap in meaning without being ambiguous or leading to an absurd result. *See Clinton v. State*, 354 S.W.3d. at 802 (holding that even though definitions of statutory terms may overlap, this does not render those terms meaningless or necessarily producing an absurd result); *see also In re Nash*, 220 S.W.3d 914, 917–18 (Tex. 2007) (noting that "there are times when redundancies are precisely what the Legislature intended"). Further, as the *Clinton* court instructed, we must presume the Legislature intended for the entire statute to be effective and to produce a just and reasonable result. *Clinton*, 354 S.W.3d at 801. The purpose of the implied-consent law is to decrease the number of casualties caused by drunk drivers. *See Neesley*, 239 S.W.3d at 785. Our interpretation of the statutory language as applied in this case balances the rights of an accused with the legislature's intended purpose and so furthers a just and reasonable result.

In this case, the TCIC information—which Comperry concedes is from a credible source—appeared to reflect that Comperry had twice before been convicted of DWI. Even though the trial court found the information in Event Cycle 2 "confusing and possibly incorrect in the way it [was] displayed," and subsequently found it to be incorrect, we cannot say the trial court erred or abused its discretion by concluding that Officer Boles was entitled to rely on the information because the TCIC database provides "normally reliable" information from a credible source. We note that even Comperry

concedes that the "great majority" of the conviction information in the TCIC is accurate, and Comperry acknowledges that "[t]he very purpose of the system is to give officers and other officials access to reliable and complete information concerning persons' criminal history."

Yet, Comperry argues that the TCIC report in this case was not reliable because it contained "facial irregularities." He states that Officer Boles "testified that each 'Event Cycle' on a [computerized criminal history] report represents a single charge brought against a defendant." But that mischaracterizes the testimony. Boles did not state that each event cycle was a single charge. In fact, Boles testified that he believed that the entry of "obstructing a highway" for April 25, 2008, related to a second offense arising out of the same transaction rather than a substitution for the DWI conviction on that date. Boles believed that the appellant had two separate convictions because "there was nothing to indicate there weren't two charges filed."

Comperry attempts to bolster his claim that Boles should have recognized that only one charge was possible by claiming that "the Double Jeopardy clause means that both reported outcomes [convictions for obstructing a highway and DWI] cannot simultaneously be true." But that is not correct. The double jeopardy clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See Brown v. Ohio,* 432 U.S. 161, 164–65 (1977). In determining whether the double jeopardy clause has been violated, this Court must apply the *Blockburger* test, which states that "where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932).

A person commits the offense of DWI when that person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code § 49.04(a). In contrast, a

person commits the offense of obstructing a highway when that person intentionally, knowingly, or recklessly renders a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit either impassable or unreasonably inconvenient or hazardous to pass without legal privilege or authority or when that person disobeys a reasonable request or order to move issued by a peace officer, fireman, or person with authority to prevent the obstruction of a highway or to maintain public safety. Tex. Penal Code § 42.03(a). As a comparison of the elements confirms, a DWI does not necessarily constitute a violation of the obstructing-a-highway offense. Moreover, each requires the proof of facts not required by the other; for example, DWI requires intoxication whereas obstructing a highway requires a culpable mental state. Thus, convictions for both offenses could have been simultaneously true and would not have been forbidden by the double jeopardy clause.

Additionally, Comperry argues that there were other irregularities in the TCIC printout that should have alerted Boles to investigate Comperry's conviction history further. Comperry points out that Event Cycle 2 reflects that both convictions were the result of the same plea on the same date, in the same court, and under the same cause number. He also contends Boles should have recognized that the justice-of-the-peace court was "incompetent to adjudicate Class B misdemeanors." But such subtleties may not have been apparent to an arresting officer, and we are not persuaded that the officer must so closely examine a TCIC report before being entitled to rely on it. Whether the court or cause number was inconsistent with other parts of the report is irrelevant to an arresting officer when the report is otherwise internally consistent. This is particularly true in this case in which the TCIC report plainly reflected that Comperry had been convicted of DWI in Galveston County. The offense was listed as "driving while intoxicated" the citation was for "PC 49.04," the relevant Penal Code statute for the DWI offense, and the "disposition" of the offense was listed as "CONVICTED."

Comperry also argues that Officer Boles was not entitled to rely on the TCIC information because he told Boles he had not been convicted of DWI as a result of the Galveston County arrest. But Officer Boles was not required to accept the bare claims of an intoxicated suspect with a criminal record over an otherwise credible source. *See Cain v. State,* 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) ("[I]ntoxication bears on credibility."). Further, the trial court specifically found that "even if [Comperry] had so informed [Officer Boles], he would have accepted the information in the TCIC over what any defendant, not just what Mr. Comperry had told him."

To the extent Comperry contends Boles should have engaged in a greater effort to confirm Comperry actually had two or more convictions, we must acknowledge that requiring officers to take additional steps to confirm a TCIC report showing two prior DWI convictions, would delay testing and possibly result in loss of evidence of intoxication in the suspect's body. *See Mata v. State,* 46 S.W.3d 902, 916 (Tex. Crim. App. 2001) ("[A] test nearer in time to the time of the alleged offense increases the ability to determine the subject's offense-time BAC [blood-alcohol content]."). This is particularly true if officers were required to contact the clerk in another county or during non-business hours. The additional time required would certainly delay the blood draw and could render it irrelevant, depending on the amount of time required for such a confirmation. *See Crider v. State,* 352 S.W.3d 704, 709 (Tex. Crim. App. 2011) (explaining that "it takes four hours of hourly 0.02 BAC decreases to make a BAC of 0.08 drop to zero"). Other than Comperry's protestation and the "confusing and incorrect" data reflecting a second DWI conviction and also a lesser charge of obstructing a highway, there was no reason for Officer Boles to question the reliability of the report. The assertion that the report was eventually proved incorrect does not mitigate or contradict the fact that Boles possessed reliable information from a credible source at the time that he received the report.

On these facts, we conclude that the trial court did not abuse its discretion by denying Comperry's motion to suppress on the grounds that the information from the database was unreliable because it contained "facial irregularities" and was later confirmed to be incorrect. We overrule Comperry's issue.

* * *

We affirm the trial court's judgment.


/s/    Jeffrey V. Brown
          Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

Publish — TEX. R. APP. P. 47.2(b).